SIXTH DIVISION
March 25, 2011

No. 1-09-0292

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 16911 |
| | ) | |
| TERRY BYRD, | ) | The Honorable |
| | ) | Neil J. Linehan, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.

Justice McBride concurred in the judgment and opinion.

Justice R.E. Gordon dissented, with opinion.

## OPINION

The circuit court denied defendant Terry Byrd's motion to quash his arrest and suppress the drugs recovered from the car the defendant was driving after he was stopped and arrested for operating a car without a valid driver's license. Following a stipulated bench trial, the defendant was found guilty of a lesser included offense. The defendant contends the recovery of the drugs from his car was not a lawful search incident to his arrest under the United States Supreme Court's recent decision of *Arizona v. Gant*, 556 U.S. __, 129 S. Ct. 1710 (2009), which was decided after his suppression hearing was held. He urges us to apply the *Gant* decision in addressing his appeal as the Illinois Supreme Court did in *People v. Bridgewater*, 235 Ill. 2d 85, 92, 918 N.E.2d 422 (2009). In the alternative, he requests we remand for a new suppression

hearing based on trial counsel's ineffectiveness, an outcome the State also seeks as an alternative disposition. We remand for a new suppression hearing to allow the parties to address the issues raised by *Gant* before the circuit court in the first instance.

BACKGROUND

In September 2008, the defendant was charged by information with possession of numerous packets containing heroin that were recovered from a magnetic box the arresting officers seized from under the chassis of the car the defendant was driving. He was charged with possession of at least 1 but less than 15 grams of a substance containing heroin with intent to deliver under section 401(c) of the Code of Criminal Procedure of 1963 (720 ILCS 570/401(c) (West 2008)). The defendant filed a pretrial motion to quash his arrest and suppress evidence, claiming the "stop, search, seizure and arrest of [the defendant] were not reasonable." The following evidence was adduced at the hearing.

On August 5, 2008, Officer Marshall and Officer Felker of the Chicago police department conducted a narcotics surveillance of the 7200 block of South Spaulding Avenue. The police district had received an anonymous phone call claiming that narcotics transactions involving a Chevrolet Cavalier were ongoing at that location. The officers parked their unmarked police car in a nearby alley and concealed themselves in a gangway at 7231 S. Spaulding. Officer Marshall testified he observed the defendant arrive in the 7200 block of South Spaulding driving a gray Chevrolet Cavalier, with a female passenger in the front seat. Officer Marshall saw a white woman, standing on the sidewalk in front of 7229 S. Spaulding, flag down the defendant's car.

From about 20 to 22 feet away, Officer Marshall observed the defendant engage in a

conversation with the woman through the open front passenger car window. Officer Marshall then observed the defendant open his driver's side door, reach his arm underneath the car, and retrieve a small black box. According to Officer Marshall, the defendant handed the woman tiny "shiny objects from that black box" for "an exchange of money." Officer Marshall did not overhear the conversation and could not make out the denomination of the money. After the exchange, the defendant opened his car door and returned the box to the undercarriage of the car. When the defendant drove off, the officers ran back to their unmarked police car located in the east alley of Spaulding.

The officers saw the defendant's car travel south on Spaulding Avenue and turn east on 73rd Street, at which point they lost sight of the defendant's car. From the alley, the officers drove eastbound on 73rd Street. The officers spotted the defendant's car traveling northbound on Sawyer, the street immediately east of Spaulding. The officers activated their emergency lights and pulled over the defendant near 71st Street and Sawyer Avenue.

Officer Marshall testified that both he and his partner, Officer Felker, exited the police car. Officer Felker approached the driver's side window while Officer Marshall remained directly behind his partner, near the front of the police car. Officer Marshall testified that when his partner asked to see the defendant's license, the defendant admitted he could produce neither a driver's license nor proof of insurance. The defendant was immediately ordered out of his car and placed in handcuffs. With the defendant in handcuffs near the front of the police car, Officer Felker reached under the chassis of the car and retrieved the same magnetic black box the officers had observed the defendant retrieve. The box measured about one inch by three or four

3

inches and was the kind commonly used to store a spare key. Officer Felker opened the black box, which revealed "little plastic square baggies" containing suspected heroin. Officer Marshall conceded he and his partner did not possess a warrant to arrest the defendant or to search his car; the defendant also did not consent to the search of his car. The defendant's vehicle was impounded.

On redirect examination by defense counsel, Officer Marshall admitted that neither the report he prepared nor the report prepared by Officer Felker mentioned a phone call concerning a Chevrolet Cavalier delivering drugs in the 7200 block of South Spaulding. Officer Marshall also admitted that he and Officer Felker were unaware the defendant did not possess a valid driver's license or proof of insurance at the time they stopped the defendant's car. According to Officer Marshall, the woman they observed flag down the defendant's car was never stopped because she was gone by the time the officers returned to the scene. Officer Marshall was the only witness that testified at the suppression hearing.

Judge Neil J. Linehan ruled the stop of the defendant's car was a lawful *Terry* stop triggered by the suspicious street transaction by the defendant and the woman on the sidewalk. The search of the defendant's car was permissible as incident to a lawful arrest after the defendant was discovered to be driving without a valid driver's license.

Following the denial of his motion, the defendant waived his right to a jury and a bench trial ensued. The parties stipulated that Officer Marshall would testify as he testified at the suppression hearing, except that his testimony regarding the tipster's phone call would be excluded on defense counsel's hearsay objection. The parties also stipulated to the scientific

evidence regarding the suspected heroin: the chain of custody was maintained; the chemist would testify that 6 of the 13 bags tested positive for the presence of heroin; and the 6 tested bags weighed 1.1 grams. Judge Linehan found the defendant guilty of the lesser charge of possession of heroin and sentenced him to three years' imprisonment on the Class 4 felony with a recommendation for drug treatment.

The defendant's timely appeal followed.

ANALYSIS

The defendant raises two claims: (1) the retrieval and search of the magnetic box attached to his car was unconstitutional under *Gant* because his arrest for not having a driver's license did not authorize the search and seizure; and (2) he received ineffective assistance of counsel when defense counsel did not impeach the officer with what the defendant characterizes as a "completely contradictory account" of his arrest. Should we decline to suppress the heroin recovered from the magnetic box, the defendant requests that we remand for a new suppression hearing based on his second claim.

The State contends that our *de novo* review of the ultimate legal ruling on the suppression motion compels a finding that probable cause existed for the stop and search of the defendant's car based on the totality of the information the officers possessed, in particular what they observed during their narcotics surveillance. Thus, the search and seizure of the magnetic box was not incident to a lawful arrest for driving without a valid driver's license and therefore *Gant* has no application here. Should we conclude that *Gant* applies, the State requests we remand for a new suppression hearing to permit it to "adduce evidence concerning police impoundment

procedure, the inventory search exception, and the possible inevitable discovery of the heroin in the black box."

Denial of Suppression Motion

"In reviewing a ruling on a motion to suppress evidence, we give great deference to the trial court's factual findings and will reverse those findings only if they are contrary to the manifest weight of the evidence. [Citation.] The trial court's legal ruling on whether the evidence should be suppressed is reviewed *de novo*." *Bridgewater*, 235 Ill. 2d at 92-93.

We set out in greater detail the proceedings on the defendant's motion to quash arrest and suppress evidence to give proper context to our analysis.

At the close of the evidence in the suppression hearing, the State argued that the testimony of Officer Marshall demonstrated probable cause that the defendant had engaged in a street sale of narcotics to the woman that flagged down the defendant in his Chevrolet Cavalier. "The officer told you that he has been a police officer for 14 years, that he has seen hundreds of narcotic transactions and he believed that that's what he saw happening here[:] *** a narcotics transaction."

The trial judge agreed that the totality of the circumstances demonstrated by Officer Marshall's testimony presented the question of "whether that would be enough for an arrest." However, the experienced trial judge did not agree that the evidence established probable cause that the street transaction was a drug sale. "[O]ne transaction on its face certainly wouldn't be enough for an arrest." Nor did the telephone call to the district that prompted the narcotics investigation by the arresting officers add to the State's claim of probable cause. "[T]he police

receive information anonymously all the time but they are required to go about *** and find probable cause." The trial judge observed that phone calls claiming drug dealing information are often "unreliable" in addition to being "anonymous." To the State's claim that the totality of the circumstances established probable cause, the experienced trial judge concluded: "I don't think so." He later reiterated this conclusion: "I am sure the State's argument is one is enough. I don't believe so."

While the trial judge did not make express findings of fact on the record as mandated by section 114-12(e) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-12(e) (West 2006) (order granting or denying a motion to suppress "shall state the findings of fact and conclusions of law upon which the order *** is based")), his legal conclusion sufficiently informs us of the supporting inferences the trial judge may have drawn to reach his decision. See *People v. Moore*, 286 Ill. App. 3d 649, 652, 676 N.E.2d 700 (1997) ("The trial court's determination concerning factual matters, including the reasonable inferences to be drawn from the testimony, is entitled to deference [citations], and this determination will not be disturbed on review unless manifestly erroneous [citations].").

The trial judge made clear his assessment that probable cause for drug dealing was not established from the single street transaction testified to by Officer Marshall. In other words, the defendant was arrested not because probable cause existed that he engaged in a drug sale, but because he failed to produce a valid driver's license and insurance card after his car was stopped.

The record establishes that the trial judge gave little weight to the phone call that triggered the narcotics investigation. The phone call was anonymous, which the trial court also

characterized as "unreliable." See *Florida v. J.L.*, 529 U.S. 266, 275 (2000) (Kennedy, J., concurring, joined by Rehnquist, C.J.) ("If the telephone call is truly anonymous, the informant has not placed his credibility at risk and can lie with impunity. The reviewing court cannot judge the credibility of the informant and the risk of fabrication becomes unacceptable."). Based on defense counsel's examination of Officer Marshall, he established that the anonymous phone call was not mentioned in either of the reports prepared by the arresting officers. Though Officer Marshall claimed that "[i]n one report it was mentioned that there was a phone call to the station regarding a Chevy Cavalier," no such report was ever brought to light by the State at the hearing; nor does the State claim the existence of such a report in the record before us.

There is also nothing in the record to support a contention that the officer received the anonymous information directly. Officer Marshall testified that the anonymous phone call came into "the station." To the extent Officer Marshall did not personally answer that call, the reliance on such police communication to establish probable cause is doubtful. See *People v. Lawson*, 298 Ill. App. 3d 997, 1002, 700 N.E.2d 125 (1998) ("Only if the officer issuing a radio bulletin has probable cause to effectuate an arrest himself will an arrest by another officer in reliance on the radio bulletin be upheld. As one leading authority has observed, if the rule were otherwise, 'an officer or agency possessed of facts insufficient to establish probable cause could circumvent the Fourth Amendment by the simple device of directing or asking some other officer or agency to make the arrest and search.' ") (quoting 2 Wayne R. LaFave, Search and Seizure §3.5(b), at 255-56 (3d ed. 1996)).

It is also consistent with the no-probable-cause ruling that the trial judge discounted

8

Officer Marshall's claim that his 14 years as a narcotics officer enabled him to know a narcotics deal when he sees one. While the State was free to urge the court to give great weight to Officer Marshall's depth of experience, the trial judge was free to disregard the officer's claims as subjective impressions of his observations. When assessing probable cause, "[our] inquiry must focus on what was done and known by the police, not on what was believed, what the facts objectively viewed add up to, not what the officer on the scene believed they added up to." *People v. Moody*, 94 Ill. 2d 1, 9, 445 N.E.2d 275 (1983). We also find no reason to disagree with the implicit decision of the circuit court to give little weight to Officer Marshall's testimony that the woman that engaged in the single transaction with the defendant "looked like [a drug abuser]." See *Moody*, 94 Ill. 2d at 10 (it is evidence that determines the reasonableness of an officer's conduct).

Finally, although not mentioned by the trial judge, Officer Marshall testified he observed the defendant exchange "shiny objects" for United States currency with the woman that flagged him down. His partner, however, consistent with the scientific evidence, recovered "plastic square baggies" of suspected heroin in the magnetic box seized from the defendant.

Against this evidence, the State persists in its contention that probable cause to arrest the defendant for narcotics transaction existed based on Officer Marshall's testimony. The trial judge explained that the single transaction observed by the officer "wouldn't be enough for an arrest." As a proposition of law, we find nothing in the State's brief to persuade us the trial judge got it wrong.

A single hand-to-hand street exchange, between a defendant and a person never

9

questioned regarding what he or she received, has generally been held insufficient to find reasonable probability that one of the items exchanged was actually contraband. See *People v. Oliver*, 368 Ill. App. 3d 690, 692, 859 N.E.2d 38 (2006) (no probable cause present where the officer claimed that based on his training and experience, the transactions between defendant and two unknown individuals involved drugs even though he "never saw any narcotics exchanged"); *People v. Holliday*, 318 Ill. App. 3d 106, 111, 743 N.E.2d 587 (2001) (single exchange, which gave rise to *Terry* stop, was insufficient to establish probable cause when it was uncertain a crime had occurred); *People v. Rainey*, 302 Ill. App. 3d 1011, 1015, 706 N.E.2d 1062 (1999) (suspicious but equivocal conduct warranted an investigative inquiry but did not justify a search); *Moore*, 286 Ill. App. 3d at 650-51 (suspicions of criminal activity at tavern did not give rise to a proper *Terry* stop when only an exchange of money was observed).

We decline the State's invitation to hold that the facts in this case, which amounted to no more than a single street transaction, established probable cause of a drug exchange as a matter of law when the trier of fact has concluded otherwise. See *People v. Green*, 179 Ill. App. 3d 1, 17, 535 N.E.2d 413 (1988) (where inconsistencies and conflicts exist in the evidence, trier of fact is in a better position to assess the evidence); *People v. McGhee*, 106 Ill. App. 3d 767, 769, 436 N.E.2d 267 (1982) (trial court's determination that probable cause did not exist to conduct a search of the defendant's car upheld).

The judge did find, however, that a lawful *Terry* stop occurred of the defendant's car.[1]

---

[1] The State is mistaken in its reading of the record that the  anonymous call to the district

Because the defendant does not challenge that ruling, we note only that the *Terry* stop provided the basis for his arrest. Once the defendant admitted he did not have a valid driver's license, the officers had probable cause to arrest him. *People v. Moorman*, 369 Ill. App. 3d 187, 196, 859 N.E.2d 1105 (2006) (defendant's statement that he could not produce a driver's license because it was revoked provided probable cause to arrest).

Ultimately, the trial judge ruled that the recovery of the magnetic box under the chassis of the defendant's car was a lawful search incident to that arrest. Of course, because *Gant* was decided after the motion was litigated in this case, the parties did not conduct the motion to suppress with *Gant* in mind.

The defendant contends that because he was arrested only for not having a valid driver's license, the search and seizure of the magnetic box was not justified under *Gant*. He suggests that, like *Bridgewater*, " '*Gant* is dispositive on the facts of this case.' " *Bridgewater*, 235 Ill. 2d at 92.

The State responds that should we find that the defendant's arrest is subject to review under *Gant*, we should remand for a new suppression hearing to give it an opportunity to introduce evidence it would have introduced had the issues in *Gant* been litigated. In other words, unlike the position of the prosecuting agency in *Bridgewater*, the State here disputes that " '*Gant* is dispositive on the facts of this case.' " *Bridgewater*, 235 Ill. 2d at 92.

---

provided the basis for the judge to rule that a proper investigative stop of the defendant occurred. The judge characterized such calls as "unreliable." We decline to read that comment as applying only to the probable cause question.

11

Because we find the record inadequate to resolve the questions raised by the parties, we remand for a new suppression hearing to allow the parties to develop the facts in light of *Gant* and to allow the circuit court to make express findings of fact and conclusions of law pursuant to section 114-12(e) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-12(e) (West 2008)).

In light of our disposition, we address only briefly the defendant's ineffective assistance of counsel claim.

Ineffectiveness of Counsel

The defendant contends defense counsel failed to impeach the testifying officer with the version of the stop of the defendant's car in the police report that he contends gives an entirely "different traffic stop [account]." The defendant lists six differences between Officer Marshall's testimony at the suppression hearing and the account in the police report. He contends there was "no sound strategic reason for counsel not to impeach."

We set out the details of only one contradictory account. The defendant quotes Officer Marshall's "Incident Narrative" from his arrest report:

> "A/O were able to curb vehicle at 7101 South Sawyer. Upon A/O's
>
> placing hand under the body of vehicle under driver's side, A/O
>
> discovered same black box. A/O asked [arrestee] what was in box,
>
> he replied, 'Dope!' Upon opening same discovered 13 clear zip
>
> baggies, with black print, each containing white powder substance,
>
> suspect white heroin."

No. 1-09-0292

We agree that the statement attributed to the defendant may be relevant in assessing the issues before the circuit court on the defendant's suppression motion. See *People v. Salgado*, 238 Ill. App. 3d 238, 246-47, 635 N.E.2d 1367 (1994) (defense counsel ineffective for failing to impeach sole identification witness that directly implicated the defendant). We cannot say, however, that the relevance of the statement would be limited to the impeachment of the officer. See *Moorman*, 369 Ill. App. 3d at 196 (the defendant's statement provided officer with probable cause to arrest).

## CONCLUSION

Because *Gant* was decided after the suppression hearing was heard in this case and *Gant* clarified when a search of a vehicle may be authorized as incident to the arrest of a recent occupant, we remand this cause to the circuit court for a new suppression hearing where the parties may develop the facts in light of *Gant*.

Cause remanded.

JUSTICE ROBERT E. GORDON, dissenting:

I must dissent because I see no need for a new suppression hearing based on *Gant*, followed possibly by a new trial. On this appeal, I would affirm defendant's conviction.

"[P]reventing a needless retrial conserves judicial resources, promotes the finality of the criminal process and prevents the prejudice to the prosecution which may occur if witnesses die, forget pertinent facts, or if the defense were able to change its strategy based upon its increased knowledge of the prosecution's case." *People v. Lindgren*, 79 Ill. 2d 129, 140-41 (1980).

I would not remand because, first, based on the undisputed facts in the record, the trial court's ruling of a valid arrest search cannot survive the United States Supreme Court's subsequent decision in *Gant*. Defendant claims that the search was not valid as a search incident to an arrest and, based on the subsequently decided *Gant*, he is correct. Thus, there is no need to remand for a hearing on the *Gant* issue.

However, I would find that the search was valid on other grounds. Our review of the trial court's legal rulings is *de novo,* and we can affirm the trial court's ruling on any basis in the record. *People v. Johnson*, 237 Ill. 2d 81, 88-89 (2010). I would decide the case based on the following two propositions, which have nothing to do with *Gant*.

First, the occupant of a vehicle does not have a reasonable expectation of privacy in an unlocked box, located slightly under the vehicle and attached only by magnet to the outside of the vehicle. Second, police officers have probable cause to search such a box for contraband, under the automobile exception to the fourth amendment, based on: 1. an anonymous and corroborated

tip; 2. the observation by the police officers of a single sale of drugs from the box; and 3. a police officer's extensive prior experience in observing drug transactions.

In the case at bar, police officers received an anonymous tip about drug activity, and then observed a drug sale. After observing defendant sell drugs from an unlocked box attached by magnet to the underside of his vehicle, officers followed and stopped defendant's vehicle. During the stop, officers also discovered that defendant was driving without a driver's license or proof of insurance. Immediately after arresting defendant, an officer removed a box attached by magnet to the underside of the vehicle, and found plastic baggies containing a substance that later tested positive for heroin.

At a pretrial suppression hearing, the trial court ruled that the container search was valid because: 1. the police officers had reasonable suspicion based on the anonymous tip and their own observations to make an investigatory stop for drug activity; 2. the subsequent arrest was valid due to defendant's lack of a driver's license and proof of insurance; and 3. the ensuing container search was valid as part of a search incident to the arrest for the driving violations. However, the trial court also ruled that, at the moment when the officers stopped the vehicle, they lacked probable cause either: 1. to arrest defendant for the drug sale; or 2. to search his vehicle to investigate for drug activity. The trial court found probable cause lacking because the officers had observed only one drug sale.

After a bench trial, the trial court found defendant not guilty of the charged offense, which was possession of a controlled substance with intent to deliver heroin. Instead, the trial court found defendant guilty of the lesser offense of simple possession, and sentenced him to 3

years imprisonment, with a recommendation for drug treatment. On this appeal, defendant claims that the container search was invalid, and that his trial counsel was ineffective in his cross-examination of the arresting officer.

I would affirm the trial court's ruling that the search was valid, but for different reasons than those cited by the trial court. I would find, first, that defendant had no reasonable expectation of privacy in the box; and second, that the police officers had probable cause to search the box for contraband, under the automobile exception to the fourth amendment. Third, unlike my colleagues in the majority, I would also find that defendant received effective assistance of trial counsel. Slip op. at 14-15. For these reasons, I would affirm defendant's conviction.

BACKGROUND

I provide a statement of facts to flush out more fully the facts related to the holdings I would make to decide this case.

As noted by the majority, defendant, age 42, was charged by information with one count of possession of less than a gram of heroin, with intent to deliver. In the defense's answer, dated October 16, 2008, to the state's request for discovery, the defense acknowledged that it had in its possession a "911 tape" related to the case. However, the tape was not introduced into evidence, at either the pretrial suppression hearing or at trial.

Defense counsel then filed a motion, dated October 18, 2008, to quash the arrest and suppress evidence on the ground that the "stop, search, seizure and arrest of [defendant] were not reasonable."

16

At the suppression hearing on December 15, 2008, the sole witness was Police Officer Robert Marshall, who was one of the two arresting officers and who was called as a witness by defendant. During direct examination by defendant, Officer Marshall testified that he had been a Chicago police officer for over 14 years. On August 15, 2008, at 12:15 p.m., he and his partner, Officer Felker,[2] were investigating drug crimes in the vicinity of 7231 South Spaulding Avenue in Chicago. The officers were in civilian clothes and utilizing an unmarked police vehicle. When Officer Marshall first observed defendant, the officers were on foot, and defendant was driving a grey Chevy Cavalier, which was traveling southbound on Spaulding Avenue and which contained a passenger.

Officer Marshall testified that he observed a white female, standing on the sidewalk in front of 7229 South Spaulding Avenue and "holding her hand up in the air." The officer testified that "it looked like she was trying to flag the vehicle down." After the woman held her hand up, defendant pulled his vehicle over, near where the woman was standing. Defendant and the woman held a conversation, which the officer observed but could not overhear.

Officer Marshall testified that defendant opened the driver's side door, stuck his arm underneath the vehicle, withdrew a black box and then closed the driver's side door. The officer observed defendant pull "out shiny objects from that black box," while continuing to converse with the woman. Then "there was an exchange of money" through the open vehicle window. After the exchange, defendant opened his door, placed the box back underneath his vehicle, closed the door and drove off.

_____

[2]No first name was stated for Officer Felker.

17

Officer Marshall testified that, during this exchange, the officers were standing approximately 20 feet away from defendant's driver-side door, and the officers' vehicle was parked in a nearby alley. After observing the exchange, the officers ran back to their vehicle. Officer Marshall observed defendant's vehicle traveling south on Spaulding and then turn east on to 73rd Street, heading towards Sawyer Avenue. After defendant's vehicle turned, the officers temporarily lost sight of it. After the officers entered their own vehicle, they overtook defendant's vehicle near the corner of 71st Street and Sawyer Avenue. The police activated the MARS lights on their vehicle, and defendant pulled over in response. Officer Marshall testified that, prior to the day of the offense, he had not observed either defendant or the female passenger.

Officer Marshall testified that, after stopping defendant's vehicle, his partner approached the driver's side and asked defendant to produce his driver's license. Defendant was unable to produce either a driver's license or proof of insurance. After defendant exited his vehicle, Officer Felker reached underneath the chassis of the vehicle and removed a magnetic black box. Officer Marshall testified that it was the type of box often used to hide a spare key. Officer Marshall testified that he observed his partner open the box, and he observed that the box contained "little plastic square baggies" of suspected heroin.

During cross-examination, the State asked whether the officers had previously received a call about narcotics transactions taking place at that location. Defense counsel objected to the question as beyond the scope of the direct examination, and the trial court overruled the objection. Officer Marshall testified that he had received a call about narcotics transactions that had specifically mentioned a Chevy Cavalier.

18

Although discovery referred to a taperecording of a 911 call, the taperecording was not introduced into evidence at the hearing, and the "call" was not identified as a telephone call or a 911 call at the hearing.

During cross-examination by the State, Officer Marshall further testified that the box was approximately one inch by four inches, and that he had observed defendant hand the woman a shiny, plastic, "real small" object from the box. The officer had also observed the woman hand U.S. currency to defendant; however, he could not specify the denomination. Officer Marshall testified that, based on his 14 years of experience as a police officer, he believed that he had just witnessed a narcotics transaction. Officer Marshall testified that, during his 14 years as a police officer, he had witnessed hundreds of hand-to-hand narcotics exchanges.

During cross-examination, Officer Marshall testified that, after stopping defendant's vehicle, he approached the passenger side and his partner approached the driver's side of defendant's vehicle. After defendant failed to produce a driver's license and proof of insurance, the officers asked him to exit his vehicle, and they placed him in custody and handcuffed him. At the moment when Officer Felker reached under the driver's side to retrieve the black box, Officer Marshall was standing directly behind him.

On redirect examination, the defense questioned Officer Marshall about two police reports which he had signed: a vice case report; and an arrest report. Only the arrest report is part of the record on appeal. Officer Marshall acknowledged that he signed the vice case report and that he "created" the arrest report. Officer Marshall testified that the vice case report stated that there were drugs being sold on the 7200 block of Spaulding Avenue, but it did not state that the

officer had received a telephone call about a Chevy Chevalier. Similarly, the arrest report also did not state that the officers were responding to a telephone call about a Chevy Chevalier delivering drugs to the 7200 block of South Spaulding Avenue.

Officer Marshall testified that, when he and his partner returned to the area of the drug transaction, the purchaser was gone. The officer testified that he had previously seen the purchaser along Kedzie Avenue and that she appeared to be a drug user.

During closing argument on the motion to quash arrest, defense counsel conceded that, once defendant failed to produce a driver's license and proof of insurance, he was under arrest and the officers had a right to search. Defense counsel stated that the issue at the hearing was whether the officers had a right to stop the vehicle, in the first place. The trial court agreed with counsel that "the issue [was] whether or not it was a valid stop."

The trial court summed up the evidence as "an anonymous tip" with independent corroboration, and the officers' personal observation of "one transaction" in light of their past experience. The trial court ruled that the search was valid because: 1. the officers had reasonable suspicion based on the corroborated tip and their own observations to make an investigatory stop for drug activity; 2. the subsequent arrest was valid due to defendant's lack of a driver's license and proof of insurance; and 3. the ensuing search was valid as part of a search incident to the arrest for the driving violations. However, the trial court also ruled that, at the moment when the officers stopped the vehicle, they lacked probable cause either: 1. to arrest defendant for the drug sale; or 2. to search his vehicle to investigate for drug activity.

Immediately after the trial court's ruling on the motion, defense counsel requested trial.

20

Defendant then waived his right to a jury trial, and both sides waived opening statements. The

parties informed the trial court that they had agreed to proceed by way of stipulation. The first

stipulation was that the parties stipulated to the testimony that Officer Marshall had just provided

at the suppression hearing. Specifically, the prosecutor stated that the parties had stipulated that:

> "That Officer Marshall was a Chicago police officer on
>
> duty on August 5th of 2008. At that time he was located in a
>
> gangway area in response to calls made of drug trafficking in that
>
> location.
>
> He and his partner then saw the defendant driving up to the
>
> location in a Chevy Cavalier, which was part of the information
>
> that they had received in their dispatch to that location.
>
> That when the defendant pulled up to the location of 7229
>
> [Spaulding Avenue] he was approaching a female white who was flagging him
>
> down. After he had a conversation with this female he then reached under the
>
> driver's side underside of the car and recovered a black box which he saw the
>
> defendant open and take out a shiny object the officer believed to be plastic and
>
> tender it to this female in exchange for United States currency, which the officer
>
> could see was green paper money."

The trial court then interrupted, stating that the prosecutor did not have to repeat the rest of the

officer's testimony. The prosecutor stated that she wanted to add one thing:

> "The only other thing I would ask to add to Officer

21

Marshall's testimony would be that after the defendant was placed into custody during a custodial search $150 United States currency was found on his person with regard to testimony."

In addition, the parties offered a written stipulation, dated December 15, 2008, to the chain of custody and the chemical composition of the seized substance. Specifically, the written stipulation stated: 1. that if Officer Robert Marshall were called to testify, he would testify that he recovered 13 plastic baggies containing powder; and 2. that if P. Evans,[3] a forensic chemist at the Illinois State Crime Lab, were called to testify, he would testify that the powder was positive for the presence of heroin, and weighed approximately 2.4 grams.

Defense counsel then objected on hearsay grounds to evidence of the telephone call that the officer received. In response to that objection, the trial court held that "the Court will consider that as to why [the officer] did what he did, not as evidence of [defendant's] intent."

The State waived its initial closing argument. In a one-paragraph closing argument, defense counsel argued that "the State has not carried its burden of proving intent to deliver beyond a reasonable doubt," and asked the court "to find [defendant] not guilty of possessing these drugs with the intent to deliver."

The trial court ruled: "based on one single transaction, one transaction only, I just don't think that's enough to show intent to deliver." Instead, the trial court found defendant guilty of the lesser included offense of simple possession.

Defendant's posttrial motion for a new trial, also dated January 7, 2009, claimed that the

---

[3]No first name was given.

trial court erred in denying defendant's motion to quash arrest and suppress evidence, because the search was unreasonable. The trial court denied defendant's posttrial motion and sentenced defendant to three years imprisonment, with a recommendation for drug treatment.

ANALYSIS

On appeal, defendant makes two claims: 1. that the container search was invalid; and 2. that his trial counsel was ineffective in his cross-examination of the arresting officer. For the reasons discussed below, I would affirm defendant's conviction.

Initially, I must observe that, if we reverse and remand for a new trial, as defendant requests on this appeal, it is possible that defendant could receive a longer sentence. The State had charged defendant with a delivery offense and had requested an extended term sentence. By contrast, defendant was convicted of only simple possession and sentenced to only three years imprisonment. Since defendant was sentenced two years ago, most of this time served has already elapsed. However, the reasonable possibility of a longer sentence does not affect our analysis.

### 1. Standard of Review for Suppression Motion

Defendant's first claim is that the container search was invalid, and that we should suppress the fruits of this search. When reviewing a trial court's ruling on a motion to suppress evidence, we apply a two-part standard of review. *People v. Johnson,* 237 Ill. 2d 81, 88 (2010). "Under this standard, we give deference to the factual findings of the trial court, and we will reject those findings only if they are against the manifest weight of the evidence." *Johnson*, 237 Ill. 2d at 88; Bridgewater, 235 Ill. 2d at 92.

23

However, a reviewing court may make " ' its own assessment of the facts in relation to the issues,' " and we review de novo the trial court's ultimate legal ruling as to whether suppression is warranted." *Johnson,* 237 Ill. 2d at 88-89, quoting *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006); *Bridgewater*, 235 Ill. 2d at 92-93.

In addition, a reviewing court may affirm the trial court's ruling on any basis found in the record. *Johnson*, 237 Ill. 2d at 89.

2. Stop

On appeal, defendant does not challenge the validity of the stop, although that was the sole issue at the suppression hearing. At the suppression hearing, defense counsel argued that the only issue was whether the stop was valid; and the trial court ruled that it was valid. The trial court found that the officer's suspicion was reasonable based on the corroborated tip and the officer's own observations of the hand-to-hand drug transaction, interpreted in light of his 14 years of experience.

I agree and I explain why, since a finding of a valid stop is necessary to find that the search that followed was lawful. Also, as I discuss in section 4 below, I believe that these same facts, that the trial court found to justify reasonable suspicion, also rose to the level of probable cause.

The fourth amendment to the United States constitution protects people against unreasonable searches and seizures. U.S. Const., amend. IV; see also *Johnson*, 237 Ill. 2d at 89. Generally, a search is considered reasonable, if police officers first obtain a warrant supported by probable cause. *Johnson,* 237 Ill. 2d at 89. However, the United States Supreme Court has

24

recognized numerous exceptions to the warrant requirement. One exception was created by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1(1968). Under the *Terry* exception, a police officer may briefly stop a person for a temporary investigation if the officer reasonably believes that the person has committed, or is about to commit a crime. *Johnson*, 237 Ill. 2d at 89, citing *Terry*, 392 U.S. at 22.

After *Terry*, the courts developed a three-tier structure for evaluating encounters between police and private citizens: 1. arrests which must be supported by probable cause; 2. brief investigative detentions, often called *Terry* stops, which must be supported by a reasonable, articulable suspicion of criminal activity; and 3. voluntary encounters that do not implicate the fourth amendment. *People v. Estrada*, 394 Ill. App. 3d 611, 616 (2009), citing *People v. Luedman*, 222 Ill. 2d 530, 544 (2006); *People v. Roa*, 398 Ill. App. 3d 158, 165 (2010).

In the case at bar, the initial stop by the police of defendant's vehicle was a valid *Terry* stop. *Terry*, 392 U.S. at 21-22. An officer may make a warrantelsss stop of a vehicle, if he can point to specific articulable facts, and any rational inferences derived from those facts, which create a reasonable suspicion that the person seized has committed or is about to commit a crime. *Estrada*, 394 Ill. App. 3d at 616; *People v. Maganelles*, 397 Ill. App. 3d 72, 77 (2009); *Terry*, 392 U.S. at 30. Reasonable suspicion is less than probable cause; and it does not require an officer to witness an actual offense. *Estrada*, 394 Ill. App. 3d at 616; *People v. Chestnut,* 398 Ill. App. 3d 1043, 1050 (2010). However, it must be more than a mere hunch. *Chestnut*, 398 Ill. App. 3d at 1050. When considering whether an officer had a reasonable suspicion, we consider the totality of the circumstances known to the officer. *Chestnut*, 398 Ill. App. 3d at 1051.

Officer Marshall certainly had reasonable suspicion to stop defendant's vehicle, based on the totality of circumstances known to him. First, Officer Marshall received an anonymous tip concerning narcotics transactions taking place in a particular location and involving a specific type of vehicle. The officer then observed the specified type of vehicle arrive in the specified location. Officer Marshall testified that he then witnessed, what he believed to be a narcotics transaction, involving that vehicle. His belief was based on his 14 years of experience as a Chicago police officer, and his observation of hundreds hand-to-hand narcotics transactions. Specifically, the officer observed defendant remove shiny and small, plastic objects from a magnetic box, that was retrieved by defendant from beneath his vehicle. The officer then observed defendant exchange the shiny objects for U.S. currency with a woman who had flagged down his vehicle. The officer also testified that the woman's appearance was consistent with that of a drug user. Based on the independently corroborated tip, the officer's personal observation of a drug transaction, and his 14 years of experience, there is no question that the officer had reasonable suspicion to stop defendant's vehicle.

Since the stop was lawful, the next issue is whether the police had a right to search the box located slightly under the validly stopped vehicle.

### 3. Expectation of Privacy

A threshhold question for any search is whether the fourth amendment applied to the search. See *Johnson*, 237 Ill. 2d at 89-90. Not every search implicates the fourth amendment. *New York v. Class*, 475 U.S. 106, 112 (1996) (the fourth amendment is implicated only if the person had a reasonable expectation of privacy in the area searched).

The fourth amendment applies only if the person claiming its protections had a legitimate expectation of privacy in the place searched. *Johnson*, 237 Ill. 2d at 90. To determine whether a person had a legitimate expectation of privacy, a court will consider factors such as "the individual's ownership or possessory interest in the property, prior use of the property, ability to control or exclude others' use of the property and [his or her] subjective expectation of privacy." *Johnson*, 237 Ill. 2d at 90. "The defendant challenging a search has the burden of establishing that he had a legitimate expectation of privacy in the searched property." *Johnson*, 237 Ill. 2d at 90.

The question that we must answer is: does a person have a legitimate expectation of privacy in an unlocked box, attached by magnet and located slightly under a vehicle?

There is no question that the box was readily removeable and not part of the vehicle itself, such as a trunk or glove compartment would have been. Defendant himself demonstrated the ease with which the box could "pop" on and off the vehicle, during the drug transaction.

The box is different than a container secured to the top of a vehicle by bungee cords. The very purpose of this box, as demonstrated by defendant, was the ease with which anyone could pop it on and off the vehicle.

There is also no question that the box was unlocked. The arresting officer testified that he was standing next to his partner when his partner simply opened it. There was no testimony concerning locks, keys or combinations. In addition, the officer had earlier testified to observing defendant open and close the box, without any reference to locks, keys or combinations.

The box was also readily removeable without crawling under the vehicle. Defendant

popped it on and off while sitting in the driver's seat.[4]

The United States Supreme Court has held that a number of police actions towards vehicles do not implicate any privacy concerns. This is particularly true when the police actions involve the vehicle's exterior. For example, the high court has held that the occupant of a vehicle has no reasonable expectation of privacy against police: 1. scraping paint samples from a vehicle's exterior; 2. having a narcotics-detection dog sniff a vehicle's exterior; 3. electronically monitoring a vehicle's movements; or 4. moving papers covering the vehicle identification number on a vehicle's dashboard. *Cardwell v. Lewis*, 417 U.S. 583, 591, 593 n. 9 (1974) ("With the 'search' limited to the examination of the tire on the wheel and the taking of paint scrapings from the exterior of the vehicle left in the public parking lot, we fail to comprehend what expectation of privacy was infringed."); *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (the sniff of a vehicle's exterior by a narcotics-detection dog "does not implicate legitimate privacy interests"); *United States v. Knotts,* 460 U.S. 276, 282 (1983) (electronic tracking of a vehicle on

[4]At the time of defendant's arrest, the Belton rule was still in effect, and this rule permitted police officers to search the entire passenger compartment of a vehicle, after an arrest. *Arizona v. Gant*, 129 S.Ct. 1710, 1717 (2009) (under the Belton rule, "when an officer lawfully arrests 'the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile' and any containers therein"), quoting *New York v. Belton*, 453 U.S. 454, 460 (1981). This may explain why defendant chose to keep the box under the vehicle rather than inside the passenger compartment.

public streets is not a search); *Class*, 475 U.S. at 114 ("the placement of obscuring papers was insufficient to create a privacy interest in the" vehicle identification number located on the dashboard).

If a vehicle occupant has no fourth amendment interest against the police scraping paint samples from the outside of his or her vehicle, I fail to see how the occupant has a greater privacy interest in a readily removeable magnetic box. In fact, an occupant has less of an interest in a detachable box, since scraping the paint off creates some damage to the vehicle and the paint was intended to be permanently affixed. By contrast, the box popped readily off, and its removal created no damage to the vehicle. Opening the box was no different than analyzing the contents of the paint scrapings. Both were police actions whose sole purpose was to uncover incriminating evidence. *Cardwell*, 417 U.S. at 588 (a police technician testified at trial about his analysis of the scrapings "color, texture [and] order of layering of the paint").

Thus, I would hold that defendant did not have a reasonable expectation of privacy in an unlocked box, located slightly under the vehicle and attached by magnet to the vehicle's underside. Cf. *Caballes*, 543 U.S. at 408 ("governmental conduct that only reveals the possession of contraband 'compromises no legitimate privacy interest'"), quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984).

### 4. Automobile Search

In addition, I would find that the officers had probable cause to search, pursuant to the automobile exception to the fourth amendment. Under the automobile exception to the fourth amendment, police officers may conduct a warrantless search of a vehicle if: 1. they lawfully stop

the vehicle; and 2. they have probable cause to believe that the vehicle contains contraband or evidence of criminal activity. *People v. Christmas*, 396 Ill. App. 3d 951, 957 (2009), citing *People v. Stroud*, 392 Ill. App. 3d 776, 803 (2009).

In the case at bar, we have already found that the vehicle was lawfully stopped. Slip op. at 12-13. Thus, we can move to the second consideration, probable cause.

The majority states that, from the trial court's holding of insufficient probable cause, we should infer that the trial court discounted several of Officer Marshall's factual assertions. Slip op. at 8-11. However, the trial court's holding was purely a legal ruling that the observation of one transaction was insufficient to create probable cause.[5] The trial court credited Officer Marshall's testimony when it found, based on his testimony, that there was reasonable suspicion to make an investigatory stop for drug activity. Based on the facts that the trial court found to justify reasonable suspicion, I would find that these same facts rose to the level of probable cause. The trial court's ultimate legal ruling, about whether suppression is warranted, is subject to our *de novo* review. *Johnson*, 237 Ill. 2d at 88; *Bridgewater*, 235 Ill. 2d at 92.

Probable cause to search a vehicle exists where the totality of the facts and circumstances known to the officer at the time of the search, interpreted in light of the officer's experience, would cause a reasonably prudent person to believe that a crime had occurred and that evidence of the crime is contained in the automobile. *Christmas*, 396 Ill. App. 3d at 957, citing *Stroud*,

---

[5]The trial court made several statements to this effect, such as "one transaction on its face certainly wouldn't be enough for an arrest" and "I am sure the State's argument is one is enough. I don't believe so." (Emphasis added.) Slip op. at 8.

392 Ill. App. 3d at 803.  In addition, "police officers may undertake a warrantless search of a closed container found in a vehicle when the officers have probable cause to believe that evidence of criminal activity will be found in the container."  *People v. James*, 163 Ill. 2d 302, 312 (1994); *People v. Morales*, 109 Ill. App. 3d 183, 186-87 (1982) (where officers had observed defendant reaching under vehicle and then completing hand-to-hand exchanges, the automobile exception permitted the warrantless search of a container concealed under the vehicle ).

In *Christmas*, the appellate court held that "because the agents never saw a transaction or exchange of any kind take place or witness any other criminal activity, they did not have probable cause to believe that a crime occurred and that evidence of a crime would be found in defendant's automobile."  *Christmas*, 396 Ill. App. 3d at 959. In contrast, in the case at bar, the officer witnessed an exchange of U.S. currency for a small, shiny object which he believed was a hand-to-hand drug transaction, based on his 14 years of experience and his observation of hundreds of similar transactions.  *Christmas*, 396 Ill. App. 3d at 959.  His personal observation also provided independent corroboration for the anonymous tip which he had previously received concerning a particular vehicle in a particular location.  Based on the officer's observation of a drug exchange, the anonymous tip which he independently corroborated and his 14 years of relevant experience, I would find that the officer had probable cause to believe that a crime had just occurred and that the black box contained evidence of that crime.

I would find that the trial court erred when it found, as a matter of law, that the observation of only one drug transaction was insufficient to create probable cause.  To search an automobile, an officer needs probable cause to believe only that "a crime" has or is about to

occur and that evidence of "the crime" is contained in the automobile. *Christmas*, 396 Ill. App. 3d at 957, citing *Stroud*, 392 Ill. App. 3d at 803. Defendant argues that the observation of only one exchange does not provide probable cause, and cites in support three cases: 1. *People v. Holliday*, 318 Ill. App. 3d 106, 111 (2001); 2. *People v. Moore*, 286 Ill. App. 3d 649 (1997); and 3. *People v. Oliver*, 368 Ill. App. 3d 690, 697-98 (2006). However, these three cases do not stand for this proposition.

First, in *Holliday*, the police officer testified that he could not observe either what the alleged purchaser handed defendant or what defendant handed the alleged purchaser. *Holliday*, 318 Ill. App. 3d at 111. The officer's testimony provided no description whatsoever concerning what was exchanged. *Holliday*, 318 Ill. App. 3d at 108. In fact, the officer testified that at first he thought that defendant was simply urinating in an alley because, when he first observed defendant, defendant was in an alley with his pants undone. *Holliday*, 318 Ill. App. 3d at 108.

By contrast, in the case at bar, the police officer never had any confusion about what defendant was doing. Unlike the officer in *Holliday*, the police officer in the case at bar was able to describe with specificity what the purchaser handed defendant, namely green bills of U.S. currency; and what defendant handed to the purchaser, namely small, shiny, plastic objects from a black box. *Holliday* does not stand for the proposition that one drug sale is insufficient to create probable cause; rather *Holliday* stands for the proposition that, when defendant's conduct appears confusing even to the officer and when the officer cannot observe the items being exchanged, then he lacks probable cause. *Holliday*, 318 Ill. App. 3d at 111-12, citing *People v. Rainey*, 302 Ill. App. 3d 1011, 1015 (1999) (no probable cause where officer did not see items).

The remaining two cases, *Oliver* and *Moore*, are also unpersuasive. Like the officer in *Holliday*, the officer in *Oliver* offered no description of what was being exchanged; and thus the *Oliver* court found that police officers lacked probable cause. *Oliver*, 368 Ill. App. 3d at 691-692, 697-98. The facts in *Moore* are even further removed from our facts. In *Moore*, even the police officer conceded that he could not tell whether he had observed an illegal transaction, where all he saw was a transfer of money outside of a tavern, and he could not tell who was giving or receiving the money or whether anything was provided in exchange for the money. *Moore*, 286 Ill. App. 3d at 650-51. Thus, all three cases cited by defendant do not stand for the proposition that the observation of one drug exchange is insufficient to provide probable cause. Instead, all three cases focused on the officer's inability to observe or describe with particularity the items exchanged; and two of the cases concerned the officer's own confusion in drawing conclusions from what he had just witnessed. This is simply not the case here.

In sum, I would find that the vehicle was validly stopped, and that the officers had probable cause to search, based on the automobile exception to the fourth amendment's warrant requirement.

### 5. Search Incident to Arrest

Defendant claims that the search was not valid as a search incident to an arrest, and he is correct. Thus, there is no need to remand for a hearing on the *Gant* issue. However, as already explained above, I would find that the search was valid on other grounds, namely that defendant did not have a reasonable expectation of privacy in the box and that the search was also valid as an automobile search.

33

Even though I would uphold the search on other grounds, I will still address this issue, since the majority is remanding for, what I believe, is an unnecessary hearing on this issue. I would find that the trial court's ruling cannot survive the United States Supreme Court's subsequent decision in *Arizona v. Gant*, 129 S.Ct. 1710 (2009) (announcing a new rule).

The *Gant* court held that police may search the passenger compartment of a vehicle as a search incident to a recent occupant's arrest if: 1. "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search"; or 2. "it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.' " (Emphasis added.) *Gant*, 129 S.Ct. at 1719, quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment).

Neither part of this rule authorizes the search in the case at bar. First, the arrestee was secured, so the first part of the rule does not apply. There is no dispute about the fact that, at the time of the search, defendant was both handcuffed and outside his vehicle.. The arresting officer testified that, prior to the search, defendant exited his vehicle and was handcuffed. Thus, defendant was secured at the time of the search.

However, the State argues that defendant, who was standing outside his vehicle, was still within kicking distance of the box, located under the vehicle. The State claims that a kick from defendant could have destroyed the evidence inside. In other words, the State claims that a well-aimed kick could have destroyed heroin, which was sealed within plastic baggies and inside a metal box.

However, we do not have to debate whether this was possible, because the Supreme

Court has provided us with a bright-line rule to apply in our analysis. The police may benefit from the first part of the new rule only if defendant was both "unsecured and within reaching distance" at the time of the search. (Emphasis added.) *Gant*, 129 S.Ct. at 1719. Since there is no dispute that defendant was secured by handcuffs, the State cannot justify a search under this part of the rule. See *California v. Acevedo*, 500 U.S. 565, 577 (1991) (recognizing the need for courts to provide clear and unequivocal guidelines to the law enforcement profession for automobile searches).

The second part of the new rule does not apply either. The police officers did not arrest defendant after simply witnessing the narcotics transaction; they took him into custody only after he failed to produce a valid driver's license and proof of insurance. Since the crime of arrest was driving without a valid licence, the police could not have expected to find evidence of this crime inside the vehicle. As the Gant court observed about the facts of its own case, defendant "was arrested for driving with a suspended license – an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." *Gant*, 129 S.Ct. at 1719. Thus, the search does not qualify as an arrest search under the second part of the new rule. Since the search does not qualify under either part, if the new rule announced in *Gant* applies to the facts at bar, then the search is not valid as a search incident to an arrest.

The Illinois Supreme Court has already applied the new *Gant* rule retroactively to a case that was pending on appeal (*People v. Bridgewater*, 235 Ill. 2d 85, 92 (2009)); and several appellate court opinions have applied it retroactively as well. *People v. Frias*, 393 Ill. App. 3d 331, 333 (2009) (applying *Gant* retroactively to a pre-Gant search where the case was still

pending on direct review); *People v. Estrada*, 394 Ill. App. 3d 611, 626 (2009) ("[f]ollowing the dictate of Gant"); *People v. Arnold*, 394 Ill. App. 3d 63, 79-80 (2009) (finding that under *Gant* "there was no justification for the [pre-*Gant*] search of the defendant's car").

In *Bridgewater*, as in our case, the search at issue occurred before Gant was decided. *Bridgewater*, 235 Ill. 2d at 92. In *Bridgewater*, as in our case, Gant was decided. while an appeal was pending. *Bridgewater*, 235 Ill. 2d at 92. In Bridgewater, our supreme court applied the new *Gant* rule to the search, even though the search had occurred prior to *Gant*. *Bridgewater*, 235 Ill. 2d at 92-93. The *Bridgewater* decision comports with prior cases which held that a new rule for the conduct of criminal prosecutions applies retroactively to all cases, which are still pending on direct review. *People v. Stechly*, 225 Ill. 2d 246, 268 (2007). Thus, the new *Gant* rule applies to the facts at bar, and the search before us was not valid as a search incident to an arrest.

The State also argues that we should apply a good faith exception to save the search as a search incident to an arrest. Since the new rule had not yet been decided at the time of the search, the police had to be acting in good faith when they acted under the old rule.

However, applying a good faith exception would completely swallow the retroactivity of the rule. In every case, the police would be found to be acting in good faith, since they cannot be criticized for not following a rule that had not yet been announced. Since the Illinois Supreme Court has already held that the new rule has retroactive application to cases still pending on appeal, the good faith exception cannot apply. *Bridgewater*, 235 Ill. 2d at 92; see also *Stechly*, 225 Ill. 2d at 268.

In addition, the "good faith" concern was rejected in *Gant* itself. See *People v. Arnold,* 394 Ill. App. 3d 63, 80 (2009) (analyzing the *Gant* opinion to show that the "good faith" concern was rejected by the majority). In *Gant*, Justice Alito in his dissent raised the "good faith" concern, observing that "[i]t is likely that on the very day when this opinion is announced, numerous vehicle searches will be conducted in good faith by police officers who were taught the [prior] rule." *Gant*, 129 S.Ct. at 1728, 173 L.Ed. 2d at 506 (Alito, J., dissenting). The majority rejected the dissent's "good faith" concern, holding that "consideration of police reliance interests" did not require "a different result." *Gant*, 129 S.Ct. at 1728, 1722, 173 L.Ed. 2d at 500. Thus, our rejection of the good faith exception is supported by the Gant opinion. See also *Arnold*, 394 Ill. App. 3d at 80 (refusing to apply the good faith exception to salvage a pre-Gant search); *Estrada*, 394 Ill. App. 3d at 628 (holding that the good faith exception provided "no basis to relax the application of the exclusionary rule" to a pre-Gant search).

For these reasons, I would hold that the search was not valid as a search incident to an arrest. However, since we may affirm on any basis found in the record, I would affirm the trial court's ruling for the reasons already discussed above.

6. Ineffective Assistance of Counsel

Defendant also claims that he received ineffective assistance of trial counsel. Defendant is claiming ineffectiveness against the trial counsel who was able to persuade the trial court: to reduce the charge from a delivery charge to a charge of simple possession; to suppress a 911 telephone call as substantive evidence at trial; and to sentence defendant to only three years imprisonment, even after a police officer testified to witnessing defendant sell drugs.

The Illinois Supreme Court has held that, to determine whether a defendant was denied his or her right to effective assistance of counsel, an appellate court must apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984); *People v. Colon*, 225 Ill. 2d 125 (2007), citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*). Under *Strickland*, a defendant must prove both that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Colon*, 225 Ill. 2d at 135; *People v. Evans*, 209 Ill. 2d 194, 219-20; *Strickland*, 466 U.S. at 687, 80 L.Ed. 2d at 693, 104 S.Ct. at 2064.

Under the first prong of the *Strickland* test, the defendant must prove that his counsel's performance fell below an objective standard of reasonableness "under prevailing professional norms." *Colon*, 225 Ill. 2d at 135; *Evans*, 209 Ill. 2d at 220. Under the second prong, the defendant must show that, "but for" counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Colon*, 225 Ill. 2d at 135; *Evans*, 209 Ill. 2d at 220. "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome – or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *Evans*, 209 Ill. 2d at 220; *Colon*, 225 Ill. 2d at 135.

On appeal, defendant claims that his counsel was ineffective for failing to question Officer Marshall about the portion of his arrest report which stated that, prior to opening the box, the police asked defendant what was in it, and defendant replied "Dope!" Defendant also claims that the report allegedly proves that the police first learned about defendant's lack of insurance

and driver's licence only as defendant was being "booked." Defendant argues that, but for counsel's failure to question the officer about these points in his report, the outcome of the suppression hearing would have been different. On appeal, defendant asks this court to remand for a new suppression hearing.

First, I would find that the performance of defendant's privately retained counsel was not deficient. At the pretrial suppression hearing, counsel did question Officer Marshall about the arrest report. Specifically, he questioned the officer about the fact that the arrest report did not mention that the police had received a telephone call about a Chevy Chevalier delivering drugs to the 7200 block of Spaulding Avenue.

However, counsel chose not to ask about the portion of the report where defendant admitted knowing that the box contained drugs. This choice was a valid trial strategy. By refraining from asking the officer about that portion of the report, trial counsel successfully kept out any evidence of defendant's admission, from both the pretrial suppression hearing and the trial. As a result of counsel's decision, there was no testimony about defendant's admission. Decisions concerning trial strategy are generally immune from claims of ineffective assistance of counsel. *People v. Johnson,* 385 Ill. App. 3d 585, 601-02 (2008); *People v. Rodriguez*, 387 Ill. App. 3d 812, 828 (2008). Counsel's choice to keep out defendant's admission was a valid trial strategy, and this choice cannot serve as the basis of an ineffective assistance claim here.

In addition, defendant claims that the arrest report proves that the police officers first learned about defendant's lack of insurance and a valid license only as defendant was being "booked." The relevant portion of the arrest report stated:

"Upon A/O placing hand under body of vehicle under driver's side,
A/O discovered same black box. A/O asked [defendant] what was
in box, he replied, "Dope!" Upon opening same discovered 13
clear zip baggies, with black print, each containing white powder
substance, suspect white heroin. Above placed into custody, and
found to be in possession of $150.00 USC, advised on miranda and
transported to 008 for processing. Narcotics were transported and
inventoried in 008. [Defendant] during name check was found to
have a suspended driver's license and no insurance. Passenger in
vehicle, [name, date of birth] was release[d] after name check
confirmation in 008 District."

Although the report specifically states that the name check for the passenger was performed at the police station, the report does not state where the officers performed the name check for defendant. The report states only that the police discovered defendant's lack of a valid license and insurance "during name check." However, the report does not state whether the name check for defendant was performed at the scene or at the police station. Thus, the wording of the report does not support defendant's claim on appeal.

For these reasons, I would find that defense counsel's performance was not deficient. Counsel's choice not to ask about his client's admission was a valid trial strategy; and the wording of the report does not support defendant's claim that the police first learned at the station about defendant's lack of a valid license and insurance. In addition, the outcome of the

proceeding would not have been different, since I would find that the search was valid, not as a search incident to the arrest for driving violations, but as an automobile search. Thus, defendant's claim does not satisfy either prong of the *Strickland* test.

CONCLUSION

In conclusion, I would find, first, that defendant did not have a reasonable expectation of privacy in an unlocked box, slightly under a vehicle and attached by magnet to it. Second, I would find that the officers had probable cause to search the box for contraband, under the automobile exception to the fourth amendment, based on: 1. the anonymous tip, which was corroborated; 2. the sale of drugs from the box, which they personally observed; and 3. their extensive prior experience in observing drug transactions. Third, I would find that defendant received effective assistance of trial counsel. On these grounds, I would affirm defendant's conviction. I would also find that, based on the undisputed facts in the record and the U.S. Supreme Court's decision in *Gant*, the search was not a valid search incident to an arrest.

For these reasons, I must dissent.