# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Grant*, 2011 IL App (1st) 091107

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONNIE GRANT, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1–09–1107 |
| Filed | June 17, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | There was no probable cause to arrest defendant for a violation of an ordinance prohibiting the solicitation of unlawful business based on an officer's observation of defendant standing on a public way shouting "dro, dro" to passing motorists, since the facts known to the officer constituted no more than a reasonable suspicion under *Terry*, and therefore, the trial court erred in denying defendant's motion to quash his arrest and suppress the cocaine discovered on his person, and because the State could not sustain defendant's conviction for unlawful possession of cocaine without the evidence that should have been suppressed, his conviction for that offense was reversed outright and the sentence was vacated. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09–CR–0398; the Hon. Maureen Slattery Boyle, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal    Michael J. Pelletier, Alan D. Goldberg, and Brian A. McNeil, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

Panel    PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.

Justice McBride specially concurred, with opinion.

Justice R. Gordon dissented, with opinion.

## OPINION

¶ 1    Defendant Ronnie Grant was arrested by Chicago police officers for violating the city of Chicago ordinance prohibiting the solicitation of an unlawful business on a public way. The officers, on a narcotics suppression mission, observed the defendant yell "dro, dro" at a passing vehicle while standing at a known narcotics sales spot, precipitating the defendant's arrest. The custodial search of the defendant resulted in the recovery of contraband. The circuit court denied the defendant's motion to quash arrest and suppress evidence. After a stipulated bench trial, the defendant was found guilty of Class 4 possession of cocaine and sentenced to three years' imprisonment. He contends he was arrested without probable cause, which, if established, means the circuit court erred in denying his suppression motion. On our *de novo* review, we hold the circuit court erred in denying the defendant's motion as his arrest was not supported by probable cause. We reverse.

¶ 2                          BACKGROUND

¶ 3    The record shows that the defendant was charged with two counts of possession of a controlled substance with the intent to deliver after police found cocaine on his person in a second custodial search following his arrest. The defendant challenged his arrest in a motion to quash arrest and suppress evidence.

¶ 4    At the suppression hearing, the defendant called Chicago police officer Stephen Hefel as his witness. The officer testified he has been a police officer for about three years. At 11:03 p.m., on November 29, 2008, he was working with five other officers on a two-vehicle narcotics suppression mission, where the officers traveled to previously known narcotics sales spots to "apprehend anybody in the commission of selling narcotics." At the time, he and two other officers were in plainclothes and in the first of the two police vehicles traveling westbound on Fifth Avenue in Chicago. From his front passenger seat, Officer

Hefel first spotted the defendant 100 to 150 feet away at the north entrance of the Chicago Housing Authority building at 3647 West Fifth Avenue. Although other people were outside the building, the defendant was standing alone. As the officers drove within 20 to 25 feet of the defendant, Officer Hefel heard the defendant yell "dro, dro" to a passing car traveling in front of the police vehicles, but the car did not stop. Officer Hefel noted the defendant's location was a "weed spot." The three officers agreed they had heard the defendant say "dro, dro" and decided to detain him. They drove diagonally across the opposing lane of traffic to a spot within 5 to 10 feet of the defendant, at which point the defendant looked in their direction and froze. He did not have anything in his hands; nor did he drop anything. The officers exited their vehicle, ran toward the defendant, and arrested him.

¶ 5    Officer Hefel testified that Officer Suing performed a custodial search of the defendant in Officer Hefel's presence and found four small, red-tinted plastic baggies from the defendant's right coat pocket. Each packet contained a green leafy substance, which Officer Hefel suspected to be cannabis. Officer Hefel acknowledged he did not observe the defendant engage in any narcotic sales; nor he did not have a search or an arrest warrant for the defendant and the defendant did not consent to the search.

¶ 6    On the State's cross-examination, Officer Hefel testified that he has made about 200 narcotics arrests in the area where the defendant was found. He is familiar with terms used in the sale of narcotics and stated that the term "dro, dro" refers to cannabis. Officer Hefel testified he maintained an unobstructed view of the defendant after first observing him because the defendant never moved from the area. No one else in the area yelled "dro, dro." The defendant was placed in custody for violating section 10–8–515 of the Chicago Municipal Code, which prohibits using a public way to "solicit any unlawful business." Chicago Municipal Code § 10–8–515 (added Apr. 1, 1998).

¶ 7    After the defendant was taken to the police station, a more thorough custodial search was conducted. To conduct the custodial search, the officers uncuffed the defendant and had him remove his outer layer of clothing. From the rear waistband of the defendant's pants, the officers recovered a plastic bag with four smaller plastic baggies inside, each of which contained a white rock-like substance, suspected to be crack cocaine. The officers also recovered $160 from the defendant.

¶ 8    On redirect examination, Officer Hefel testified that he learned through his experience and speaking with numerous arrestees that "dro, dro" refers to a certain type of cannabis and yelling "dro" is a way of soliciting business. No other witness testified at the hearing.

¶ 9    Based on Officer Hefel's credible testimony, the circuit court denied the defendant's motion to quash arrest and suppress evidence. Thereafter, the State amended count II of the information to delete "with intent to deliver"; a stipulated bench trial followed. In addition to Officer Hefel's testimony, the State and the defendant stipulated to the chain of custody of the suspected cocaine and to the results of the crime lab analysis that one of the four bags tested positive for less than 0.1 grams of cocaine and that the total estimated weight of all four was 0.3 grams. The court found the defendant guilty of Class 4 possession of cocaine and sentenced him to three years' imprisonment. This appeal followed.

¶ 10                              ANALYSIS

¶ 11     The defendant asserts the officers did not have probable cause to arrest, which renders the contraband recovered from his person during the custodial search subject to suppression as a product of an illegal arrest. *People v. Mendoza*, 62 Ill. App. 3d 609, 622 (1978) (citing *Beck v. Ohio*, 379 U.S. 89 (1964)). The defendant contends we should look only to "the information available to the officers preceding the arrest" to assess whether the arrest is supported by probable cause. For this position, the defendant relies on *People v. Tisler*, 103 Ill. 2d 226, 237 (1984) (probable cause is based on " 'the knowledge possessed by the officer at the time of arrest' " (quoting *People v. Wright*, 41 Ill. 2d 170, 174 (1968))).

¶ 12     The State contends that the "defendant's shouts of 'dro dro,' a term for cannabis, to passing vehicles in a known narcotics area constituted probable cause to effectuate a warrantless arrest of defendant for soliciting an unlawful business pursuant to [section 10–8–515 of the] Chicago Municipal Code." The State quotes *People v. Love*, 199 Ill. 2d 269, 279 (2002), for the proposition that probable cause existed because " 'the facts known to the officer at the time of the arrest [were] sufficient to lead a reasonably cautious person to believe that the person has committed a crime.' "

¶ 13     The parties agree on the standard of review. Historical facts are subject to review only for "clear error." *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). In other words, factual findings may be rejected only if they are against the manifest weight of the evidence. *Luedemann*, 222 Ill. 2d at 542. We review *de novo* "determinations of *** probable cause." *Ornelas*, 517 U.S. at 699.

¶ 14     There are no factual disputes between the parties. In reviewing the circuit court's ruling, we take the facts elicited from Officer Hefel at the suppression hearing that are consistent with the circuit court's denial of the defendant's suppression motion. See *People v. Wear*, 371 Ill. App. 3d 517, 530 (2007), *aff'd*, 229 Ill. 2d 545 (2008) ("[w]hen interpreting a judgment, we strive to effectuate the trial court's intent"). Whether the unchallenged facts adduced at the suppression hearing support a finding of probable cause presents a question of law. *People v. Pitman*, 211 Ill. 2d 502, 511-12 (2004).

¶ 15     The State does not contend that anything short of a full-blown arrest of the defendant occurred immediately upon the officers confronting and handcuffing the defendant. Nor does the State make any argument that probable cause existed to support the defendant's arrest for the charge of cannabis or cocaine possession.

¶ 16     To justify a warrantless search incident to an arrest, the State must demonstrate probable cause to justify the defendant's arrest. "Probable cause for arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense." *People v. Lippert*, 89 Ill. 2d 171, 178 (1982). "Consistent with our precedent, our analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions.' " *Arizona v. Gant*, 556 U.S. ___, ___, 129 S. Ct. 1710, 1716 (2009)

(quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). A search incident to a lawful arrest is one such exception. *Gant*, 556 U.S. at ___ , 129 S. Ct. at 1716 ("The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.").

¶ 17      At the suppression hearing, the defendant established a *prima facie* case that a warrantless search was conducted based on the defendant's warrantless arrest. "The burden of production then shifted to the prosecution to [establish probable cause]." *People v. F.J.*, 315 Ill. App. 3d 1053, 1057 (2000). In other words, "[o]nce a defendant challenges a warrantless search, it becomes the State's burden to show that the search [is constitutional]." *People v. Rushing*, 272 Ill. App. 3d 387, 390 (1995). "When a police officer has proceeded without a warrant to search, seize evidence, or arrest a person, the trial court making a probable-cause determination is to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant." *Tisler*, 103 Ill. 2d at 236.

¶ 18      The defendant contends that it is fair to infer that the officers arrested the defendant with the prospect of recovering contraband from his person based on their narcotics suppression mission. Grounded on this inference, the defendant claims that we should analyze his fourth amendment claim based on the actual charges filed against him. To support this position, the defendant noted at oral argument that an arrest imposes the same intrusion, whether it is based on an ordinance violation or a criminal offense, so the probable cause showing should be no less demanding simply because the defendant is arrested under a city ordinance aimed at stemming, at least in part, unlawful sales of narcotics rather than a state statute prohibiting possession of a controlled substance. See *Lippert*, 89 Ill. 2d at 179 (quoting Professor LaFave's treatise that suggests the probable cause test may be more stringent when the question confronting the officer is whether a crime had occurred).

> " '[T]he probable cause test is a "compromise" for accommodating the "often opposing interests" of privacy and law enforcement. The compromise might well be struck somewhat differently in cases where the uncertainty is whether any crime has occurred, for it appears that the privacy and law enforcement interests ought to be weighed somewhat differently in that context.' " *Lippert*, 89 Ill. 2d at 179 (quoting 1 Wayne R. LaFave, Search and Seizure § 3.2, at 484-85 (1978)).

¶ 19      In his testimony, Officer Hefel made clear the purpose of the narcotics suppression mission: "We were going to previously known narcotics sales spots to see if we could apprehend anybody in the *commission of selling narcotics*." (Emphasis added.) Officer Hefel conceded that the defendant was never observed selling narcotics. Rather, he and his fellow officers arrested the defendant "for the exploitation [*sic*] of unlawful business." Of course, ultimately, the defendant faced only charges stemming from the recovery of the cocaine from the defendant's person upon the second custodial search, which were only discovered after his arrest for the ordinance violation. The question remains whether the petty crime of an ordinance violation occurred under the facts adduced at the suppression hearing.

¶ 20                 Probable Cause Based on an Ordinance Violation

¶ 21      Because it is the State's burden to demonstrate a constitutional arrest, we confine our

analysis to the State's contention that probable cause existed to arrest the defendant for an ordinance violation. For the State, the simple act of shouting "dro, dro" at a passing vehicle at a known narcotics hot spot constituted probable cause to arrest the defendant for violating the city ordinance. The ordinance violation arrest made the defendant subject to a custodial search, which resulted in the recovery of cannabis, making the defendant subject to a state criminal charge and a further custodial search, which resulted in the recovery of cocaine.

¶ 22 The defendant asserts that the information the State presents as constituting probable cause amounted to no more than reasonable suspicion to permit an investigative stop. See *Terry v. Ohio*, 392 U.S. 1, 22 (1968) (an officer may temporarily stop a person for brief questioning if the officer reasonably believes that the person has committed or is about to commit a crime). He reasons that the United States Supreme Court has established a bright line that an individual's presence alone at a known narcotics spot is not sufficient to establish reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."). If an individual's presence at "an area of expected criminal activity" cannot justify a *Terry* stop, then it follows that the mere yelling of "dro, dro" by an individual at that same spot cannot elevate the suspicion of criminal activity past what is required to justify a *Terry* stop, that is, to a point of providing legal justification for an arrest.

¶ 23 The instant defendant implies that the interests of law enforcement are adequately met by an investigative stop by the officers, which might have led to the development of additional facts to establish probable cause to arrest. " 'The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an *intermediate response*.' " (Emphasis added.) *Lippert*, 89 Ill. 2d at 187 (quoting *Adams v. Williams*, 407 U.S. 143, 145 (1972)). Because the officers had at most reasonable suspicion, the arrest and search of the defendant were unreasonable under our fourth amendment jurisprudence because the officer observed no exchange between the defendant and another citizen. See *People v. Byrd*, 408 Ill. App. 3d 71, 77 (2011) ("A single hand-to-hand street exchange, between a defendant and a person never questioned regarding what he or she received, has generally been held insufficient to find reasonable probability that one of the items exchanged was actually contraband.").

¶ 24 The parties do not provide us with a single case that addresses probable cause in the context of an ordinance violation; nor has our research discovered such a case. To support its contention that the defendant was properly arrested for violating the city ordinance, the State relies on this court's decision in *Powell*, which reversed the circuit court's ruling that the ordinance was unconstitutionally vague. *City of Chicago v. Powell*, 315 Ill. App. 3d 1136 (2000). *Powell* remains the only opinion interpreting the city ordinance at issue. We examine in depth the *Powell* decision to address the State's contention that probable cause existed for the defendant's arrest.

¶ 25 "A defendant has the fundamental right under the United States and Illinois Constitutions to be informed of the nature and cause of criminal accusations made against him. The 'nature

and cause' of a criminal accusation refers to the crime committed rather than the manner in which it was committed." *Powell*, 315 Ill. App. 3d at 1140-41 (citing *People v. DiLorenzo*, 169 Ill. 2d 318 (1996)). "Where a statute does not specifically define the crime, or does so only in general terms, the charge must go beyond the words of the statute; the facts that constitute the crime must be specifically set forth." *Powell*, 315 Ill. App. 3d at 1143 (citing *People v. Grieco*, 44 Ill. 2d 407 (1970)). Section 111–3(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111–3(a) (West 2008)) requires that a charge set forth the nature and elements of the offense. *Powell*, 315 Ill. App. 3d at 1141.

¶ 26     Nowhere in its brief does the State provide us with the explicit nature and elements of the ordinance violation that it contends provided the basis for the arrest. That a violation was presumably made out is summarized in its contention that "Officer Hefel had probable cause to arrest defendant for shouting 'dro, dro' to passing vehicles because defendant's speech was crucial to committing the solicitation of unlawful business." The State plainly asserts: "Defendant has no reason to shout 'dro, dro' to passing vehicles in a known narcotic[s] area unless defendant intended to sell narcotics. Thus, Officer Hefel had probable cause to arrest defendant for soliciting the illegal sale of narcotics."

¶ 27     In *Powell*, we analyzed two pending complaints to determine the legal sufficiency of each when challenged by a motion to dismiss. "[A] complaint alleging solicitation of unlawful business sufficiently informs a defendant with reasonable certainty of the nature and cause of that charge if it contains information establishing the *type of unlawful business* that the defendant is accused of soliciting and the factual basis for such a charge." (Emphasis added.) *Powell*, 315 Ill. App. 3d at 1143. "Defendants assert that the trial court's dismissal of the charges should be affirmed because the charging documents were fatally defective under Illinois law." *Id.* at 1140. Defense counsel argued that Powell's complaint " 'fails to state any cause for which Mr. Powell could be *arrested*.' " (Emphasis added.) *Id.* at 1142.

¶ 28     Of course, because no complaint based on an ordinance violation was ever filed against the instant defendant, the requirement that an ordinance violation be charged with "reasonable certainty" to permit an arrest in the context of this case is problematic. Nonetheless, the facts are sufficiently spread of record to permit our review as to whether an ordinance violation could be properly charged under the circumstances of this case. We consider whether the facts adduced at the suppression hearing set out in an ordinance-violation complaint would withstand a motion to dismiss under *Powell*.

¶ 29     In *Powell*, we concluded that one of the complaints at issue was fatally defective.

> "[I]t appears that the only defective complaint is the one against defendant Woods. That complaint charges that Woods '[c]ommitted the offense of soliciting unlawful business in that he knowingly and unlawfully interfered [with] and impeded the flow of vehicular and pedestrian traffic by standing at above address and was heard yelling "blows" to passing motorist and pedestrians.' The complaint does not describe the type of unlawful business that Woods allegedly solicited. *** Therefore, Woods was properly dismissed." *Id.* at 1143.

¶ 30     The facts elicited in this case during the hearing on the motion to quash arrest and suppress evidence are indistinguishable from the facts set forth in the complaint we found

was subject to dismissal in *Powell*. In other words, the facts here regarding the alleged violation by the defendant of the city ordinance set forth in an ordinance-violation complaint would be fatally deficient under Illinois law, making it subject to a motion to dismiss under *Powell*. It necessarily follows that the same facts, fatally deficient under *Powell*, would fall short of demonstrating probable cause, as a matter of law, to permit his arrest for violating the city ordinance. See *Powell*, 315 Ill. App. 3d at 1142 (motion to dismiss lies where a complaint fails to state any cause to justify an arrest). *Cf. Howard v. Firmand*, 378 Ill. App. 3d 147, 156-57 (2007) (Garcia, J., specially concurring) (based on the rulings by the circuit court, probable cause existed as a matter of law to support the civil filings seeking orders of protection, which precluded malicious prosecution claims).

¶ 31 Had a complaint been filed against the defendant based on what the officers observed and heard, such a "complaint charging solicitation of 'unlawful business' in the language of the ordinance is insufficient under section 111–3 because the [statutory] phrase 'unlawful business' does not describe specific conduct." *Powell*, 315 Ill. App. 3d at 1143. As the city conceded in *Powell*, and as we held:

> "[S]uch a complaint would be fatally defective. The only conduct alleged in the complaint is the yelling of the word 'blows.' However, the complaint does not explain the supposed meaning of that term. A reasonable person would not necessarily know that 'blows' is a slang term for a controlled substance." *Id.*

It follows that in the instant case, a complaint that alleges nothing more than the conduct of yelling the term "dro, dro" is insufficient as a matter of law because it does not inform a reasonable person that "dro, dro" is a slang term for cannabis. See *Powell*, 315 Ill. App. 3d at 1143.

¶ 32 Nor would adding Officer Hefel's understanding of the term to the complaint that "dro, dro" was a means of soliciting the sale of cannabis correct the deficiency. Officer Hefel testified he learned the definition of the term "dro, dro" from other arrestees over his three years' experience as a Chicago police officer, suggesting he was unfamiliar with the term until then. He testified that "dro, dro" refers to a certain type of cannabis, but he did not identify the type. Unlike the term "blows," which if defined in a complaint as a "common term" for heroin sufficiently defines the crime as we held in *Powell*, we are unpersuaded that "dro, dro" qualifies as a "common term" for cannabis such that a complaint defining the term would satisfy the requirement that an ordinance violation be charged with "reasonable certainty." *Powell*, 315 Ill. App. 3d at 1143. A simple electronic search of a database of Illinois case law fails to disclose a single case that contains the term "dro, dro." Nor have we encountered this term prior to this case.

¶ 33 In line with our holding in *Powell* regarding the complaint that we found fatally deficient, a reasonable person would not necessarily know that "dro, dro" is a slang term for cannabis. *Id.* Therefore, a complaint alleging no more than the facts elicited at the suppression hearing would be properly dismissed. *Id.* Consistent with this holding, we conclude that a man of reasonable caution, under the facts and circumstances of this case, would not believe that an offense has been committed. See *Lippert*, 89 Ill. 2d at 178. Nor would the facts elicited from Officer Hefel prompt a judge or magistrate to issue a warrant for the defendant's arrest for

soliciting an unlawful business under the ordinance. See *Tisler*, 103 Ill. 2d at 236 ("the trial court making a probable-cause determination is to apply standards at least as stringent as those that guide a magistrate in deciding whether to issue a warrant").[1]

¶ 34 Because the facts elicited from Officer Hefel could not survive a motion to dismiss under *Powell* if those facts were set forth in an ordinance-violation complaint, it follows that those same facts do not constitute probable cause that the defendant violated the city ordinance. In so holding, we do not ignore that an arrest for a purported violation of the ordinance would legitimize the arrest of an individual conducted solely for the purpose of performing a custodial search to see if the arrestee is in possession of contraband. See *Terry*, 392 U.S. at 13 ("A ruling admitting evidence in a criminal trial, we recognize, has the necessary effect of legitimizing the conduct which produced the evidence, while an application of the exclusionary rule withholds the constitutional imprimatur.").

¶ 35 The facts known to Officer Hefel amounted to no more than reasonable suspicion under *Terry*. The circuit court erred in denying the defendant's motion to quash arrest and suppress evidence because probable cause to justify the arrest was not established. "Because the State cannot prevail on remand without the evidence that we have held should have been suppressed, we also reverse [the defendant's] conviction and sentence outright." *People v. Fulton*, 289 Ill. App. 3d 970, 976 (1997).

¶ 36                               CONCLUSION

¶ 37 Probable cause did not exist to arrest the defendant for allegedly violating the city ordinance against the solicitation of unlawful business based on nothing more than observing the defendant standing on the public way yelling "dro, dro." Therefore, the trial court erred in denying the defendant's motion to quash arrest and suppress evidence. Without the evidence that should have been suppressed, the State cannot prove the defendant's guilt. We reverse the defendant's conviction and vacate his sentence.

¶ 38 Reversed.

¶ 39 JUSTICE McBRIDE, specially concurring:

¶ 40 I agree that the decision of the circuit court should be reversed but not because of the *Powell* decision. The *Powell* case addressed the constitutionality of the instant ordinance and whether the indictment was defective. In my opinion, *Powell* does not support the outcome here.

¶ 41 The facts within the officers' knowledge at the time defendant was placed under arrest can be summarized as follows. Defendant was standing on a public way in an area known for drug sales. The officers had made numerous drug arrests at that stop before. Defendant

---

[1]Though this precise issue is not before us, it is also doubtful that a magistrate or judge would issue a warrant to arrest an individual seen and heard yelling "marijuana, marijuana" at a known narcotics spot because the mere yelling of words does not provide probable cause to arrest, though such action would properly trigger an investigative stop.

was heard to say twice in rapid succession the word "dro." "Dro" is a slang term for marijuana. According to one of the officers, it is a term used to sell cannabis. It appeared to the officers that defendant was uttering these words, "dro, dro," to a passing car. These are the basic facts upon which it is claimed that there was probable cause to arrest. While I agree these facts might arguably suggest a suspicion that criminal activity was afoot, specifically that defendant was soliciting the sale of cannabis, I do not agree that these facts amount to probable cause. Probable cause to arrest are those facts which lead a reasonably cautious person to believe that the person arrested has committed a crime.

¶ 42    Although the particular ordinance under which the officers were acting does not require that an unlawful transaction take place, noticeably absent in this case are any facts to suggest that an unlawful transaction had taken place or was about to take place. For example, when the officers approached they did not observe the defendant doing anything; he was just standing on the public way. The defendant did not go into his pockets, he did not put anything into his pockets, and he did not retrieve anything from his pockets. The defendant was not observed approaching any persons or any vehicles, nor was he observed handing any objects to anyone. He was not seen receiving money or any objects from anyone. When the officers drove their vehicles to the location where defendant was standing, defendant did not flee. The defendant stood there, was handcuffed, and immediately placed under arrest. What should have occurred in this case was a brief detention, a *Terry* stop, aimed at confirming or dispelling the officers' suspicions that defendant was soliciting for unlawful business. The mere utterance of slang terms for drugs to a passing vehicle in a heavy narcotics traffic area without more does not amount to probable cause. Since the defendant's arrest was without probable cause, I agree that the evidence obtained should be suppressed. Accordingly, I concur in the decision to reverse the judgment of the circuit court.


¶ 43    JUSTICE ROBERT E. GORDON, dissenting:

¶ 44    I respectfully dissent.

¶ 45    If the defendant stood in a known narcotics trafficking area and yelled "marijuana for sale," I have no doubt that the majority would find probable cause for solicitation of unlawful business in a public way.

¶ 46    The result should not be any different because he used street slang instead of the king's English.

¶ 47    I disagree with the majority on a number of points. First, although the majority was "unpersuaded that 'dro, dro' qualifies as a 'common term' for cannabis" (*supra* ¶ 32), the trial court was persuaded, and the majority fails to explain why this factual finding was against the manifest weight of the evidence. A police officer testified to this fact based on his knowledge and expertise, and this fact went unrebutted by any other evidence or testimony. Thus, I cannot agree that this factual finding was against the manifest weight of the evidence.

¶ 48    Second, the majority states repeatedly that since a reasonable person would not know that "dro" is a slang term for cannabis, "a complaint alleging no more than the facts elicited at the suppression hearing would be properly dismissed." *Supra* ¶ 33. See also *supra* ¶ 33 ("a

reasonable person" would not know "that 'dro, dro' is a slang term for cannabis"). Again, this overlooks the fact that "the facts elicited at the suppression hearing" included the officer's knowledge and expertise, and his unrebutted definition of the term. See also *supra* ¶ 30 (discussing the "facts elicited" at the hearing, without including the officer's expertise).

¶ 49     Third, the majority states, almost as evidence, that it had never before encountered the term "dro." *Supra* ¶ 32. An electronic database search revealed a number of cases in the last few years in which police officers and other witnesses testified that the term "dro" is used to denote marijuana. *United States v. Foxx*, 544 F.3d 943, 947 (8th Cir. 2008) (" 'Dro' is slang for higher quality marijuana or hydroponic marijuana, according to an officer who testified at trial."); *State v. Thomas*, 08–1171, at 3 (La. App. 5 Cir. 4/28/09); 13 So. 3d 595, 598 (an undercover narcotics agent testified that defendant referred to the marijuana he had for sale as " 'dro' "); *United States v. Pugh*, No. 4:07CR00375–01–WRW, 2008 U.S. Dist. LEXIS 66016, at *2 (E.D. Ark. Aug. 18, 2008) ("Hydro-phonic marijuana (commonly known as 'Dro') was found during a search of the car."); *State v. Peterson*, No. C0A04–573, 2005 N.C. App. LEXIS 921, at *2 (N.C. App. May 3, 2005) (the term " 'dro' [was] referring to a type of marijuana"); *State v. Murray*, No. C0A02–1540, 2003 N.C. App. LEXIS 1935, *2 (N.C. App. Oct. 21, 2003) (a cooperating witness testified that he understood the term " 'the dro,' *** to mean marijuana").

¶ 50     Fourth, the majority appears to denigrate the officer's expertise by noting that he did not appear familiar with the term "dro" until arrestees started informing him of the term over the last three years. *Supra* ¶ 32. We can take judicial notice of the fact that slang changes.

¶ 51     Fifth, the majority criticizes the officer for not testifying to the specific type of marijuana that "dro" refers to. *Supra* ¶ 32. Whatever the type, soliciting its sale was still unlawful business.

¶ 52     Therefore, I must dissent.