# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Neal*, 2011 IL App (1st) 092814

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNETH NEAL, Defendant-Appellant. |
| District & No. | First District, Third Division <br> Docket No. 1-09-2814 |
| Filed | June 29, 2011 |
| Held <br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful possession of a controlled substance was affirmed and the constitutionality of an ordinance prohibiting the solicitation of unlawful business, the violation of which was the basis for his arrest, was upheld over challenges of overbreadth and vagueness where the court could properly conclude that the officers involved witnessed defendant violate the ordinance and thus had probable cause to arrest him, especially when they saw defendant standing at an intersection in a 'high gang and narcotics area" yelling "blows" to passers-by. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-2798; the Hon. John P. Kirby, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Peter Sgro, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE MURPHY delivered the judgment of the court, with opinion.
Presiding Justice Quinn concurred in the judgment and opinion.
Justice Steele dissented, with opinion.

## OPINION

¶ 1    Following a bench trial, defendant Kenneth Neal was convicted of possession of a controlled substance (less than 15 grams of heroin) (720 ILCS 570/402(c) (West 2008)) and sentenced to two years' probation. On appeal, defendant contends that the police lacked probable cause to arrest him for violating a municipal ordinance prohibiting the solicitation of unlawful business. The evidence showed that he did nothing more than repeatedly yell the word "blows," and he contends that the heroin recovered in his postarrest search should therefore have been suppressed.

¶ 2    Defendant was arrested by Chicago police and initially charged with soliciting unlawful business in violation of a Chicago ordinance (Chicago Municipal Code §§ 10–8–515(a), (b) (added Apr. 1, 1998)) (the Ordinance) and possession of a controlled substance. The arrest report indicated that he was arrested "in a high gang and narcotics area" for yelling "blows" in violation of the Ordinance and a custodial search at the police station found heroin. Defendant was formally charged with possession with intent to deliver.

¶ 3    Defendant filed a motion to quash, contending that the police lacked probable cause to arrest him for nothing more than allegedly shouting "blows" in an area alleged by police to be a "high gang and narcotics area." Therefore, the heroin found in his custodial search should be suppressed as "fruit of the poisonous tree."

¶ 4    At the motion hearing, Officer Jerome Malkowski of the Chicago police department testified that he saw defendant standing at an intersection in Chicago repeatedly yelling "blows" at passers-by. Officer Malkowski testified that, in his 15 years of police experience with hundreds of narcotics arrests, " 'blows' is a term used in the street sale of heroin." He suspected that defendant was trying to sell heroin. Officer Malkowski had not seen defendant hand anyone anything, take anything from anyone, or converse with any of the passers-by. Officer Malkowski did not testify that the area of defendant's arrest was notable for gang activity or narcotics sales. He arrested defendant for violating the Ordinance by soliciting unlawful business. Defendant was brought to the police station, where a custodial search found seven packets of heroin. On this evidence, the court denied the motion to quash,

finding that Officer Malkowski testified credibly that defendant had been soliciting unlawful business on a street and thus had probable cause to arrest him.

¶ 5    Defendant filed a motion to reconsider, arguing that repeating "blows" to passers-by was by itself insufficient to constitute probable cause. While defendant acknowledged that Officer "Malkowski brought to the court's attention [that] 'blows' can mean heroin," he argued that this at best constituted reasonable suspicion for an investigatory stop rather than probable cause. Following arguments, the court denied the motion to reconsider. The court noted that speech integral to unlawful conduct is not constitutionally protected and that, while solicitation is a specific-intent offense, intent may be inferred from defendant's actions and the circumstances. The court expressly found that shouting "blows" on a street was a violation of the Ordinance.

¶ 6    At trial, Officer Malkowski testified consistently with his hearing testimony. The parties stipulated to the effect that the seven items found on defendant after arrest contained 1.5 grams of heroin. The court found defendant guilty of simple possession of a controlled substance, rather than possession with intent to deliver as charged. Defendant contended in his unsuccessful post-trial motion that his motion to quash was erroneously denied. He was sentenced to two years' probation, and this appeal followed.

¶ 7    On appeal, defendant contends that the police lacked probable cause to arrest him for the ordinance violation of soliciting unlawful business where the evidence showed that he did nothing more than repeatedly yell the word "blows."

¶ 8    The Ordinance, section 10–8–515 of the Municipal Code of Chicago, provides:

> "(a) No person may *** stand upon, use or occupy the public way to solicit any unlawful business ***.
>
> (b) As used in this section, 'unlawful business' means any exchange of goods or services for money or anything of value, where the nature of the goods or services, or the exchange thereof, is unlawful. Unlawful business includes, but is not limited to, prostitution or the illegal sale of narcotics. For purposes of this section, 'soliciting' may be by words, gestures, symbols or any similar means." Chicago Municipal Code §§ 10–8–515(a), (b) (added Apr. 1, 1998).

Violation of the Ordinance is punishable by up to 200 hours of community service, a fine of at least $500, and/or imprisonment for between 10 days and 6 months for a first offense. Chicago Municipal Code § 10–8–515(c).

¶ 9    This court has upheld the Ordinance against constitutional challenges of overbreadth and vagueness:

> "According to defendants, the City should 'wait until an actual violation of a real criminal law occurs and then arrest the suspect.' This argument is meritless. The ordinance is designed to rid our city streets of drug dealers and prostitutes. If an individual actually completed the illegal business which he solicited, there would be no need to charge him under the ordinance. *** Under the ordinance, that moment [when police may act] occurs when the purpose to engage in unlawful business is combined with soliciting that offense by way of words, gestures, or symbols." *City of Chicago v. Powell*, 315 Ill. App. 3d 1136, 1146 (2000).

The term "solicit" in the Ordinance is a well-defined term, read *in pari materia* with its use in the Criminal Code. *Id.* at 1147-48 (720 ILCS 5/2–20, 8–1 (West 1998)). Solicitation requires specific intent, which may be inferred from surrounding circumstances and the defendant's acts. *Id.* at 1145.

¶ 10 Police may arrest a person without a warrant only where they have probable cause; that is, where the facts known to police at the time of arrest would lead a reasonably cautious person to believe that the person was committing or had committed an offense. *People v. Hopkins*, 235 Ill. 2d 453, 472 (2009). Probable cause is not proof beyond a reasonable doubt but a probability of criminal activity. *Id.* The focus is upon the practical, commonsense considerations that animate the actions of reasonable and prudent people rather than legal technicians. *Id.* "[I]n deciding whether probable cause exists, a law enforcement officer may rely on training and experience to draw inferences and make deductions that might well elude an untrained person." *People v. Jones*, 215 Ill. 2d 261, 274 (2005).

¶ 11 A trial court's ruling on a motion to quash or suppress presents mixed questions of law and fact. *People v. McDonough*, 239 Ill. 2d 260, 265-66 (2010). The court's findings of fact will be upheld on review unless they are against the manifest weight of the evidence, because the trial court is in a superior position to weigh the credibility of the witnesses, observe their demeanor, and resolve conflicts in their testimony. *Id.* at 266. However, a reviewing court may undertake its own assessment of the facts and may draw its own conclusions when deciding on appropriate relief, so that we review *de novo* the ultimate question of whether the evidence should be suppressed. *McDonough*, 239 Ill. 2d at 266.

¶ 12 Here, the question before the trial court, on the motion to quash and subsequently, was whether there was probable cause to suspect that defendant was violating or had violated a law under which he could be arrested. The Ordinance is such a law. 65 ILCS 5/1–2–1.1 (West 2008); 725 ILCS 5/102–15, 107–2(1)(c) (West 2008). The Ordinance prohibits the solicitation of unlawful business on the public way in Chicago, expressly including the illegal sale of narcotics as such a business. The evidence here was to the effect that defendant solicited the sale of heroin, an illegal narcotic, on a public way in Chicago. On that evidence, the court could properly conclude that officers witnessed defendant violate the Ordinance and thus had probable cause to arrest him.

¶ 13 Defendant argues that the term "blows" does not necessarily refer to heroin, and the core of his argument is his assertion that "while courts consider the training and experience of the officer as part of the totality of circumstances, they need not implicitly accept all of the officer's suspicions as reasonable." However, while the trial court was not, and we are not, required to accept Officer Malkowski's testimony, we see no reason not to do so. Officer Malkowski's belief that defendant was soliciting the sale of heroin was based on knowledge from 15 years' police service and hundreds of narcotics arrests that "blows" refers to the sale of heroin. The touchstone here is probability rather than certainty beyond a reasonable doubt, common sense rather than legal pedantry. "Thus, the existence of possible innocent explanations for the individual circumstances or even for the totality of the circumstances does not necessarily negate probable cause." *People v. Rodriguez-Chavez*, 405 Ill. App. 3d 872, 876 (2010). In that light, we reject defendant's assertion that, because the word "blows" has meanings other than heroin, Officer Malkowski, the trial court, or this court should

-4-

presume that defendant was using one of those other meanings in yelling "blows" repeatedly to passers-by on a Chicago street corner.

¶ 14    The cases cited by defendant regarding probable cause to arrest for offenses involving possession of a controlled substance are irrelevant. There, the issue was whether officers had sufficient information to suspect that a defendant *possessed* narcotics; that is, whether it could be inferred from actions short of overt present possession of known narcotics that a defendant possessed or had possessed narcotics. By contrast, the issue here was whether police could believe that defendant *solicited* the sale of narcotics. That is, the issue is whether he committed a complete violation of the Ordinance in the presence of police.

¶ 15    Defendant cites to *People v. Lee*, 214 Ill. 2d 476 (2005), where our supreme court vacated convictions for possession of a controlled substance and possession with intent to deliver where the defendant was arrested for violating a municipal ordinance prohibiting loitering on or near a public way "in a manner and under circumstances manifesting the purpose to engage in drug-related activity." Joliet Municipal Code § 21–10.1(a) (1990). However, *Lee* is distinguishable from the instant case. In *Lee*, police received a tip that three men were selling drugs at a particular intersection and, upon reaching the intersection, saw three men standing on the street speaking with the driver of a van, whereupon they arrested the three men for violating the drug-loitering ordinance. *Lee*, 214 Ill. 2d at 478-79. However, there was no evidence that the men were loitering: "For all the officers knew, the driver of the van might have stopped and asked for directions, or to greet one or more acquaintances. These facts lack any overt act that would constitute probable cause for a warrantless arrest under the ordinance." *Id.* at 486. Moreover, " 'standing in a public place with no apparent purpose is not a crime. *** When you add nothing to nothing, you get nothing.' " *Id.* (quoting *City of Chicago v. Youkhana*, 277 Ill. App. 3d 101, 114 (1995)).

¶ 16    By contrast, the instant defendant was arrested for the overt act of yelling "blows" to passers-by, not merely standing in a public place. We find that this action and the testimony of an experienced police officer with hundreds of narcotics arrests support the finding of probable cause. We recognize the well-written analysis by the dissent as well as the recent decision entered by the sixth division of this court in *People v. Grant*, 2011 Il App (1st) 091107. We agree with the dissent in *Grant*.

¶ 17    Accordingly, the judgment of the circuit court is affirmed.

¶ 18    Affirmed.


¶ 19    JUSTICE STEELE, dissenting:

¶ 20    The majority opinion holds that a person may be arrested on the charge of soliciting unlawful business based solely on a police officer's understanding of a single word. In so holding, the majority opinion implicitly adopts an unprecedented definition of solicitation and significantly lowers the threshold for probable cause. Accordingly, I respectfully dissent.

¶ 21    A ruling on a motion to suppress evidence ordinarily presents mixed questions of fact and law. *People v. McDonough*, 239 Ill. 2d 260, 266 (2010). On appeal, we will reverse the trial court's findings of fact only if they are against the manifest weight of the evidence. *Id.* However, we will consider *de novo* "the ultimate question of whether the evidence should

be suppressed." *Id.* In this case Neal challenges none of the circuit court's factual findings. Thus, this case presents a question of law.

¶ 22     An arrest executed without a warrant is valid only if supported by probable cause. *People v. Hopkins*, 235 Ill. 2d 453, 472 (2009). "Probable cause exists where the arresting officer has knowledge of facts and circumstances that are sufficient to justify a reasonable person to believe that the defendant has committed or is committing a crime." *People v. Jones*, 215 Ill. 2d 261, 273-74 (2005). The existence of probable cause depends upon the totality of the circumstances at the time of the arrest. *People v. Wear*, 229 Ill. 2d 545, 564 (2008) (citing *People v. Love*, 199 Ill. 2d 269, 279 (2002)). The "totality of the circumstances" includes the experience of the officer, the behavior and characteristics of a suspect, whether the location of the stop is a "high crime" area, and an officer's prior dealings with the individual or knowledge of a criminal record. See, *e.g.*, *United States v. Jackson*, 300 F.3d 740, 745-46 (7th Cir. 2002).

¶ 23     In this case, Officer Malkowski believed Neal was violating section 10–8–515 of the Chicago Municipal Code. The ordinance provides in relevant part:

> "(a) No person may: (i) stand upon, use or occupy the public way to solicit any unlawful business; or (ii) interfere with or impede any pedestrian or anyone in a vehicle on the public way, for the purpose of soliciting any unlawful business.
>
> (b) As used in this section, 'unlawful business' means any exchange of goods or services for money or anything of value, where the nature of the goods or services, or the exchange thereof, is unlawful. Unlawful business includes, but is not limited to, prostitution or the illegal sale of narcotics. For the purposes of this section, 'soliciting' may be by words, gestures, symbols or any similar means." Chicago Municipal Code § 0–8–515 (added Apr. 1, 1998).

Thus, the ordinance defines *how* solicitation may occur, but fails to define *what* solicitation is.

¶ 24     The majority relies on *City of Chicago v. Powell*, 315 Ill. App. 3d 1136 (2000), to assert that the ordinance is to be read *in pari materia* with the Criminal Code of 1961. *Powell* addressed the definition of solicitation in disposing of a vagueness challenge to the ordinance:

> "Many Illinois statutes involve the offense of solicitation and have not been found to be unconstitutionally vague. Defendants criticize the City for defining the term 'soliciting' in a different way than it is used in criminal law. The Criminal Code of 1961 defines 'solicit' as 'to command, authorize, urge, incite, request, or advise another to commit an offense.' 720 ILCS 5/2–20 (West 1998). In contrast, the ordinance applies to the person who solicits so that he can commit a crime. However, the Criminal Code's definition of the crime of solicitation indicates that the act of soliciting is intentional behavior. See also 720 ILCS 5/8–1 (West 1998) (defining the specific offense of solicitation as commanding, encouraging, or requesting another to commit a particular offense with the intent that the offense be committed). 'Solicit' has also been defined as '[t]o appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain

by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain; *** [t]he term implies personal petition and importunity addressed to a particular individual to do some particular thing *** to command, authorize, urge, incite, request, or advise another to commit a crime.' Black's Law Dictionary 1392 (6th ed. 1990). Thus, the definition of 'solicit' is so well understood that no further definition of the ordinance is necessary." *Powell*, 315 Ill. App. 3d at 1147-48.

Thus, the *Powell* court actually agreed with the defendants that the solicitation targeted by the ordinance differs from solicitation as defined by the Criminal Code of 1961, recognizing "the ordinance applies to the person who solicits so that he can commit a crime," rather than the solicitation of another to commit a crime. Accordingly, the definition of solicitation in *Powell* turns on the remaining common elements, *i.e.*, personal petition and importunity addressed to a particular individual to engage in unlawful business.

¶ 25 In its brief, the State expands the definition of solicitation, arguing that standing on a street corner and yelling "blows" is "akin to a vender [*sic*] at a ballgame yelling the nouns 'peanuts, peanuts' or 'beer, beer'." This definition is nowhere to be found in the ordinance. This definition is nowhere to be found in the Criminal Code of 1961. This definition is nowhere to be found in *Powell*. Nevertheless, to find probable cause exists in this case, the majority opinion implicitly adopts an expanded definition of solicitation, which has two major flaws.

¶ 26 First, according to the definition outlined in *Powell*, solicitation requires the importuning of "another." Indeed, the " 'term implies *personal* petition and importunity *addressed to a particular individual* to do some particular thing.' " (Emphases added.) *Powell*, 315 Ill. App. 3d at 1147-48 (quoting Black's Law Dictionary 1392 (6th ed. 1990)). In this case, the undisputed evidence established that Neal was yelling "blows" on a street corner, but he was not conversing or interacting with any of the passers-by. The lack of "another" in this case is particularly salient, as this court recognized in *Powell* that a reasonable person would not necessarily know that "blows" is a slang term for a controlled substance. *Powell*, 315 Ill. App. 3d at 1143. The patrons hearing a vendor at a sporting event can be expected to understand what peanuts and beer are. In contrast, there is no evidence here that anyone other than Officer Malkowski heard and understood what "blows" meant. There is also no evidence in the record that Neal was soliciting Officer Malkowski or anyone else, for that matter, to purchase illegal narcotics.

¶ 27 Second, patrons at a sporting event understand the vendor's barking as soliciting business precisely because they are attending a sporting event; the location provides the context of the verbal act. In this case, as the majority opinion correctly notes, Officer Malkowski did not testify that Neal was in a high-crime area or a location known for illegal drug sales. The majority opinion notes the arrest report indicating that Neal was arrested "in a high gang and narcotics area." However, the arrest report was not admitted into evidence at the suppression hearing and should not be considered by this court on appeal. See *People v. Blankenship*, 406 Ill. App. 3d 578, 590 (2010) (citing *People v. Long*, 208 Ill. App. 3d 627, 638 (1990)). The majority opinion also notes that Neal's motion to quash refers to the police allegation of a "high gang and narcotics area," but such is not a clear, unequivocal statement of concrete fact

-7-

that could be deemed a judicial admission by Neal. See, *e.g.*, *Jordan v. Knafel*, 355 Ill. App. 3d 534, 544 (2005).[1]

¶ 28    In this case, based on the record properly before us, Officer Malkowski effected a warrantless arrest of Neal based solely on his understanding of the slang word "blows." To be sure, "in deciding whether probable cause exists, a law enforcement officer may rely on training and experience to draw inferences and make deductions that might well elude an untrained person." *Jones*, 215 Ill. 2d at 274. Nevertheless, probable cause requires more than a hunch or reasonable suspicion of criminal activity. See, *e.g.*, *People v. Lampitok*, 207 Ill. 2d 231, 255 (2003). When assessing probable cause, "[our] inquiry must focus on what was done and known by the police, not on what was believed, what the facts objectively viewed add up to, not what the officer on the scene believed they added up to." *People v. Moody*, 94 Ill. 2d 1, 10 (1983). This court is to assess the totality of the circumstances, but the majority opinion holds that only one circumstance needs to exist to bypass reasonable suspicion and demonstrate probable cause.

¶ 29    Moreover, the risks of expanding the definition of solicitation and diminishing the probable cause threshold are well known. Historically, there have been objections to extending solicitation to minor crimes, based on the fear that false charges may readily be brought, either out of misunderstanding or harassment. 2 Wayne R. LaFave, Substantive Criminal Law § 1.1(b), at 193 (2d ed. 2003). The potential for false charges under the ordinance increases dramatically as a result of this decision.

¶ 30    In sum, the majority opinion finds probable cause to arrest for solicitation under the ordinance, based on an expanded definition of the term, without any evidence that Neal solicited anyone, and absent any other circumstances suggesting criminal activity, merely because Neal was saying the word "blows" in public. For all of the aforementioned reasons, I respectfully dissent.

---

[1]As the majority notes, the First District, Sixth Division, of this court has ruled that probable cause did not exist under similar factual circumstances, even when there was evidence the arrest occurred at a place known for narcotics sales. *People v. Grant*, 2011 Il App (1st) 091107.